No. 26079

In the Matter of the Application for Water Rights of the Fort Lyon Canal Company, in Prowers County, Darrell Perdue and Dessie Perdue v. The Fort Lyon Canal Company, CF&I Steel Corporation, The Amity Mutual Irrigation Company, James Wagner and Rudolph Styduhar, Jr., Division Engineer

(519 P.2d 954)

Decided March 4, 1974. Opinion modified and as modified rehearing denied March 25, 1974.

Johnson, McLachlan, Tempel & Gehlhausen, Harlan Johnson, for appellants.

Gordon, Lefferdink and Legg, John J. Lefferdink, for appellee The Fort Lyon Canal Company.

Welborn, Cook, Phipps & Brown, David R. Phipps, for appellee CF&I Steel Corporation.

Robert G. Rogers, for appellee The Amity Mutual Irrigation Company.

Fairfield and Woods, Charles J. Beise, for appellee James Wagner.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

This action involves some of the waters of Thurston Lake in Prowers County. In granting a conditional decree to the appellee Fort Lyon Canal Company, the water judge ruled that by reason of an agreement this decree was superior to an earlier decree obtained by the appellants, the Perdues. We affirm.

At all material times Fort Lyon has been the owner of the land upon which Thurston Lake is located. Of prime importance in the case is the water judge's finding that the waters of Thurston Lake are non-tributary to any stream. This finding is not contested here.

Under date of April 19, 1954, Fort Lyon as first party and Darrell Perdue and others as second parties entered into an agreement. It provided that the second parties were granted a license to lay pipes and install pumps whereby water could be pumped from Thurston Lake to the lands of the second parties. The agreement further provided as follows:

"(a) That the construction, maintenance, and use of said pipeline, pump or pumps and power line, and any other structure, ditch, or equipment in connection therewith, are subject at all times and in and under all circumstances, to the superior right of the first party to use the said Thurston Reservoir in any way it deems necessary or proper; and the second parties expressly agree that they will not at any time exercise the license herein given in any way to damage, injure or interfere with the rights or property of the first party, and will not at any time claim that any rights are or will be created by prescription as against the said first party by enjoyment of this license, or otherwise.

"(b) That the first party is not, by this license, granting to the second party any right or interest in any water or water right owned by or claimed by the said first party, and is not selling to second parties the right to use any water in said reservoir or agreeing to have or maintain any water in Thurston Reservoir for the use of the second parties, and the first party shall have the right at all times to use or discharge all of the water in said Thurston Reservoir at any time.

"(c) The said second parties do not now and will not hereafter claim any interest in any water stored in Thurston

Reservoir or flowing therein as against the said first party."

Accordingly, the Perdues installed a water transportation system and put five cubic feet of water per second of time to beneficial use for irrigation purposes on their lands. In a water adjudication under the former law (C.R.S. 1963, 148-9-1 *et seq.*) in Bent County, the Perdues obtained a decree in 1959 for five c.f.s. so taken and used by them with a priority date of May 17, 1954.

In 1970 Fort Lyon applied for a conditional water right to 25 c.f.s. out of Thurston Lake under the Water Right Determination and Administration Act of 1969, 1969 Perm. Supp., C.R.S. 1963, 148-21-1 *et seq.* The Perdues appeared and asked that any rights granted Fort Lyon be subject to the Perdues' decree. The parties stipulated as to the facts. The court found that it had jurisdiction, granted the conditional decree as requested, and ruled that under the agreement of April 19, 1954, the priority decreed to the Perdues was junior to the water right granted to Fort Lyon.

At the outset, we point out that no constitutional issues have been raised in this case.

## I.

■■ The Perdues assert that a water judge does not have jurisdiction over non-tributary water, and cite *Larrick v. District Court,* 177 Colo. 237, 493 P.2d 647 (1972). Under 1969 Perm. Supp., C.R.S. 1963, 148-21-10(1), the water judge is given jurisdiction with respect to "water matters." *Larrick* held that under The Colorado Ground Water Management Act (1965 Perm. Supp., C.R.S. 1963, 148-18-1 *et seq.*) "designated ground water" is excluded from "water matters." Here, however, we are dealing with the rare instance of non-tributary water not being designated ground water. We hold that this type of water is included within the term "water matters."

■ The Perdues also contend that under the Water Right Determination and Administration Act of 1969 the water judge has jurisdiction over priorities to water, but has not been granted jurisdiction over private agreements which may affect such priorities. It is inconceivable to us that the

legislature intended to grant the water judge jurisdiction with respect to priorities but to bar him from determining the effect of a prior contract upon the priorities awarded. We hold that this jurisdiction is implied in the constitution and the statute. Colo. Const. art. VI, § 9(1).

■ It must be born in mind that the water judge is a district judge and as such, under the Perdue position, would have jurisdiction to determine the effect of the contract. To be sure, venue might properly be in another county than in the county in which the water judge sat. But, absent a venue question, the judge has jurisdiction throughout the state. The Perdues have never raised any venue question, and it is deemed to be waived. When the water judge wears two hats, it would approach an absurdity to say that he must rule in two different actions to bring about the result obtained here.

· II.

■ The Perdues cite 1969 Perm. Supp., C.R.S. 1963, 148-21-22 which states that priorities awarded in any year be junior to all priorities awarded in previous years and are junior to all priorities awarded in decrees entered prior to June 7, 1969. The water judge's ruling does not conflict with this statute. By contract a person can make his priority inferior to another, and the water judge found that this happened here. It is judicial economy for the water judge to find the effect of the contract and recite it in the priority decree.

III.

The Perdues argue that their decree became *res judicata* and superseded the 1954 agreement. *Forker v. Hopkins,* 64 Colo. 325, 171 P. 361 (1918), is cited in support of this proposition. We have studied the record and the briefs in *Forker,* and our statement of the facts in that case come from both the opinion and the record. There, five ditches, owned by different individuals, diverted water from the stream. In 1888 the five owners entered into a written agreement whereby each of the five would be entitled to one-fifth of the water available to the five. In 1889 each of the five sought a separate adjudication of his water rights and

they introduced the agreement in evidence taken by the referee. The referee made the usual findings concerning the different priorities and amounts to which the ditches were entitled. The referee's findings also stated that by the written agreement the priorities of the ditches were equal and that the water commissioner should divide the available water accordingly. The court entered a decree which stated that the referee's findings as reported and filed in the court "be in all things approved and confirmed." The decree then granted each owner the appropriation and priority as found by the referee, irrespective of the contract. The court did not mention the agreement. The ditch owners continued to abide by the agreement until 1914 with each taking one-fifth of the water. In 1914 some of the ditch owners disregarded the agreement and took more than one-fifth of the water, and the action was brought against them. The trial court ruled that nothing was done to change the decree within the time required by law and, since the decree did not mention the agreement, the priorities established by the decree superseded the agreement. This court affirmed.

We merely assume for the purpose of this case that the court had jurisdiction to adjudicate this non-tributary water under the former law, and do not pass on the question.

■ Fort Lyon seeks to distinguish *Forker* as there all parties had access to the stream and were before the court, whereas here the Perdues had no means whatsoever, in the absence of the agreement, to make an appropriation of the water since Fort Lyon was the owner of the land to be traversed in order to make an appropriation. Also, it occurs to us that it might be argued that the powers granted the water judge under the present statute are greater in this respect than under the former statute. Whether or not the two cases are distinguishable, we must say that today we would not affirm the trial judge in *Forker*. The water judge was correct in finding that the Perdue decree did not supersede the agreement.

IV.

■ The final argument of the Perdues is that the

agreement was invalid and without consideration because at the time it was made Fort Lyon had not used the water and, therefore, was not the owner of the water. C.R.S. 1963, 148-2-2 provides that the person, upon whose land the seepage of spring waters first arise, shall have the prior right to such water if capable of being used upon his land. That right in Fort Lyon was sufficient to breathe validity and consideration into the contract.

Judgment affirmed.

MR. JUSTICE KELLEY did not participate.