621 P.2d 952 (1981)
In the Matter of the Application For Water Rights of Francis MERRICK in the Arkansas River or its Tributaries in Otero County, Applicant-Appellant,
v.
The FORT LYON CANAL COMPANY, Objector-Appellee, and
Robert W. Jesse, Division Engineer, Water Division No. 2, Appellee.
No. 79SA242.
Supreme Court of Colorado.
January 12, 1981.
Rehearing Denied February 2, 1981.
*953 Ralph N. Wadleigh, La Junta, for applicant-appellant.
Lefferdink, Lefferdink & Stovall, John J. Lefferdink, Lamar, Calkins, Kramer, Grimshaw & Harring, Wayne B. Schroeder, Denver, for objector-appellee.
ROVIRA, Justice.
This is an appeal by Francis Merrick (Merrick) from a ruling of the Water Court denying his application for approval of a plan for augmentation by using a well as an alternate point of diversion. We affirm.
Merrick is the owner of 7.396 acres of land located near La Junta, Colorado. Appurtenant to his land is 7/40 c. f. s. or .175 c. f. s. of water delivered by The Fort Lyon Canal Company (Ft. Lyon) pursuant to an 1884 agreement and an 1890 water deed between his predecessor in interest, Abraham Armentrout, and the predecessor in interest of Ft. Lyon, Arkansas River Land, Reservoir and Canal Co. (ARLRC).[1]
In the 1884 agreement Armentrout promised to convey "any and all right he [might] now have in any and all water rights by reason of taking water out of the Arkansas River . . . ." as well as rights of way for ditches to the Arkansas River Land, Town and Canal Co. in exchange for a conveyance by water deed of a perpetual water right for 620 acres of land which was particularly described. The water deed, which was entered into and signed by both parties in 1890 pursuant to the 1884 agreement, granted Armentrout "the right to the use of water flowing through the canal of [ARLRC] to the amount of 620 statutory inches of water." This grant was subject to certain reservations and conditions, among them being: (1) water was to be delivered during the irrigating season and at no other time unless with the consent of ARLRC; (2) the water was to be used only for domestic and irrigation purposes on certain described land; (3) the water was not to be allowed to run to waste; (4) the water should be taken through flumes, weirs or other arrangements; and (5) Armentrout was allowed to keep and maintain at least four gates or weirs, and the water was to be flowed and taken from the canal through the weirs or gates. Merrick's present interest in the land and water is a fractional part of the original 620 acres and 620 statutory inches of water referred to in the agreement and water deed.
Prior to filing his plan for augmentation, Merrick filed an application with the State Engineer for a permit to construct a 15 gallons per minute (g. p. m.) well on his property for the purpose of diverting ground water from the Arkansas River alluvium. The well was to be used to furnish water for a greenhouse which Merrick intended to construct on his land. The application was denied for the reason that there would be a diversion of water from or tributary to the Arkansas River system which would injure the vested water rights of others.
Subsequently, Merrick filed a plan for augmentation in which he proposed to drill *954 the 15 g. p. m. well and then remove one acre of his land from cultivation and divert back to the Arkansas River the quantity of water consumptively used in his greenhouse operation.
Ft. Lyon objected to the plan for augmentation which involved the use of the proposed well as an alternate point of diversion on the grounds that (1) contrary to the terms of the water deed, there would be an enlarged use, both in quantity and time, by reason of an increase in application to vegetation within the greenhouse and, also, a greater consumptive use because of the water's sustained and lengthened application; (2) Ft. Lyon was the owner of the water right which is to be used for augmentation; and (3) the water deed precluded the use of the subject water right to augment the proposed well.
After a hearing on the application, the Water Court determined that, although Merrick owned no shares of stock in Ft. Lyon, he nevertheless was the owner of a "right to have water diverted [by Ft. Lyon] delivered for his use or benefit pursuant to section 37-92-301(3)(b) C.R.S. 1973." Further, that section 37-92-301(3)(b), in the absence of any other factor, would allow Merrick to use his proposed well as an alternate point of diversion. The Water Court concluded, however, that Merrick was limited by the express terms of the 1890 Water Deed and that: "[A]llowing water to be withdrawn by well in the plan for augmentation or as an alternate point of diversion, without the consent of the Ft. Lyon Canal Co., would enlarge the benefits of the user in excess of benefits contracted for. This would require the Court to make a new and different contract for the parties, which it cannot do."
The Water Court thereupon denied Merrick an opportunity to propose terms and conditions which would prevent injury as a result of its plan for augmentation pursuant to section 37-92-305(3), C.R.S. 1973, and dismissed the application.

I.
Merrick contends that the proposed plan for augmentation did not violate any provisions of nor enlarge any of his benefits under the water deed; that the Water Court erred in denying him an opportunity to propose terms and conditions pursuant to section 37-92-305(3), C.R.S. 1973; and that the Water Court misinterpreted the requirement in the water deed requiring prior consent of Ft. Lyon.
Although Merrick concedes that his substantive water right is based on the water deed, he contends that he has a vested contractual right which should come under the protection of section 37-92-305(3), C.R.S. 1973,[2] since it is mandatory for the Water Judge to permit the proposing of terms and conditions if he finds injury to vested water rights or vested rights of others.
The rights and obligations under the water deed at issue here have not previously been judicially determined. However, other deeds or contracts involving similar language have been construed in the past, and these cases supply an analytical framework for determining the rights of the parties here.
In Wyatt v. The Larimer and Weld Irrigation Company, 18 Colo. 298, 33 P. 144 (1893), a contract between a ditch company and a landowner, similar to that at issue here, was construed by this court. There the court held that the rights of the parties were predicated upon and must be determined by the terms of the contract.
*955 In La Junta & Lamar Canal Co. v. Hess, 6 Colo.App. 497, 42 P. 50 (1895), a water deed granted to the landowner a "right to the use of water flowing through the canal...." The court said that a water right was defined by the language in the deed and the respective rights of the parties were governed by the terms of that deed.
In Wright v. The Platte Valley Irrigation Co., 27 Colo. 322, 61 P. 603 (1900), the ditch company sold rights for the carriage of water to certain owners of land. The contract specified the amount of water each landowner would be entitled to, that the water could be furnished during the irrigating season and at no other time, and that the water would only be used to irrigate certain described land. The landowner admitted to using the water to irrigate land other than that specified in the contract.
The issue was whether the provision of the contract which limited the use of the water to the specified land was valid. The court answered this question in the affirmative, holding that such limitation was not against public policy and was not an illegal or unreasonable exaction on the part of the ditch company. It held that the landowner, by reason of his application of the water to a beneficial use "is said to be an appropriator, yet we do not think he occupies the exact status of one who appropriates the water directly from the public stream." The court determined that the contract with the ditch company was not for the purchase of a given volume of water, but the purchase of the right to use the ditch as a means to conduct a given volume, or so much thereof as may be necessary to irrigate a certain number of acres.
In Green v. Chaffee Ditch Co., 150 Colo. 91, 371 P.2d 775 (1962), the question was whether a contract water user could change a point of diversion without the consent of the ditch company which had been judicially determined to be the owner of the ditch and the "priorities and appropriations thereof." The court held that a contractual right to use water on specified land is far different from a "water right" acquired by appropriation, diversion, and application to a beneficial use and that the contract water user was, in effect, a consumer whose rights were determined by his contract. The court stated that the shareholders of the ditch company were the equitable owners of the water rights adjudicated to the ditch and the rights of the contract water users were not comparable to those enjoyed by the shareholders. In its opinion the court quoted with approval the finding of the trial court that:
"When not necessary for the proper irrigation of the described lands, the 3.2 c. f. s. from said priority is available for, and is used by, stockholders of the ditch. Thus, any enlarged use of the water, in excess of that allowed by the contract and Decrees, and accordingly, any change of point of diversion, would impose a greater burden on the company and its stockholders, and would conversely enlarge the benefits to the petitioners, in excess of the detriments and benefits contracted for."
Merrick's water deed, or contract for the use of water, does not fundamentally differ in form from the contracts which were under review in Wright, supra, or Green, supra.
We are drawn to the conclusion that Merrick's rights must be determined by the terms of the water deed through and on which his claim for water is based. He has a right to use water at such times, manner, and place as is provided in the water deed; and his rights are governed by the water deed and not by section 37-92-305(3), C.R.S. 1973[3] He does not have the same status as one who appropriates water directly from a public stream.[4]
The evidence and the law support the water court's findings, conclusions, and *956 judgment that allowing the water to be withdrawn by the proposed well in the plan for augmentation without the consent of Ft. Lyon would enlarge the benefits to Merrick in excess of the benefits contracted for.[5] To conclude otherwise would be to make a new and different contract for the parties with increased detriments on one side and increased benefits on the other.
The judgment of the trial court is affirmed.
NOTES
[1] ARLRC was the successor in interest of the Arkansas River Land, Town and Canal Co., which negotiated the 1884 agreement with Armentrout.
[2] Section 37-92-305(3) provides that:

"A change of water right or plan for augmentation, including water exchange project, shall be approved if such change or plan will not injuriously affect the owner of or persons entitled to use water under a vested water right or a decreed conditional water right. If it is determined that the proposed change or plan as presented in the application would cause such injurious effect, the referee or the water judge, as the case may be, shall afford the applicant or any person opposed to the application an opportunity to propose terms or conditions which would prevent such injurious effect."
[3] This is to say that Merrick's statutory right to seek a plan for augmentation is subject to the terms of the agreement on which his claim to a water right is based. The water judge correctly refused to allow Merrick to propose terms and conditions for his plan for augmentation, based on the statute, which would have ignored the terms and conditions of the contract.
[4] Even where a party has a decreed water right, prior contractual agreements under some circumstances may determine the relative rights of the parties contrary to the decree. See Perdue v. Ft. Lyon Canal Co., 184 Colo. 219, 519 P.2d 954 (1974).
[5] The water judge did not abuse his discretion in refusing to reach the issue of potential injury to Ft. Lyon. The necessity for Ft. Lyon's consent to a change in point of diversion is implicit in its powers under the contract; their contract specifies that Ft. Lyon must consent to delivery of water outside the irrigating season.