FORT LYON CANAL CO. and the State of Colorado, Department of Natural Resources, Division of Wildlife, Applicants-Appellants,

v.

CATLIN CANAL COMPANY, Amity Mutual Irrigation Company, District 67 Irrigation Canal Association, the Holbrook Irrigating Company, Las Animas Consolidated Canal Company, Southeastern Colorado Water Conservancy District, Objectors-Appellees.

**and**

Robert W. Jesse, Division Engineer for Water Division No. 2, Appellee.

No. 80SA468.

Supreme Court of Colorado, En Banc.

March 22, 1982.

---

Lefferdink & Davis, John J. Lefferdink, Lamar, Calkins, Kramer, Grimshaw & Harring, Wayne B. Schroeder, David C. Hallford, Denver, for applicant-appellant Fort Lyon Canal Co.

Joel Cantrick, First Asst. Atty. Gen., Dennis M. Montgomery, Asst. Atty. Gen., Natural Resources Section, Denver, for applicant-appellant The State of Colorado, Department of Natural Resources, Division of Wildlife.

Mitchell & Mitchell, P. C., Rexford L. Mitchell, Rocky Ford, for objector-appellee Catlin Canal Co.

Carl M. Shinn, Lamar, for objectors-appellees Amity Mutual Irrigation Co. and District 67 Irrigation Canal Association.

Ralph N. Wadleigh, La Junta, for objectors-appellees Holbrook Irrigating Co. and Las Animas Consolidated Canal Co.

Fairfield & Woods, Charles J. Beise, Denver, for objector-appellee Southeastern Colorado Water Conservancy Dist.

J. D. MacFarlane, Atty. Gen., Denver, for Robert W. Jesse, appellee.

George Woodard, Alamosa, for amicus curiae Rio Grande Water Users Association.

LOHR, Justice.

The District Court for Water Division No. 2 (water court) dismissed the application of The Fort Lyon Canal Company (Ft. Lyon)

and The State of Colorado, Department of Natural Resources, Division of Wildlife (State), for a change in the point of diversion of certain water rights owned by the State and represented by shares of stock in Catlin Canal Company, a mutual ditch company (Catlin). The water court determined that the applicants were required by a Catlin bylaw to request approval of the proposed change by Catlin's board of directors, and to allow a reasonable time for the board to act on the request, before seeking a judicial decree under section 37–92–302, C.R.S.1973 (1981 Supp.) authorizing the change of water right. Although the applicants had requested the necessary approval, the court found that they had not allowed Catlin a reasonable time to respond before filing their application in the water court. The court therefore granted Catlin's motion to dismiss the application. The applicants appealed. We affirm the judgment of dismissal.

## I.

Catlin owns a canal having a headgate on the Arkansas River. The water diverted through the canal historically has been used to irrigate agricultural land in Otero County. A history of the State's efforts to change the point of diversion[1] of water to which it is entitled as a stockholder in Catlin is necessary to an understanding of the dispute now before us.

The State acquired 2,097.58 shares of the capital stock of Catlin, constituting 11.2% of that stock, and in 1973 filed an application in the water court for a change of water right, No. W–4025, seeking to change the nature and place of use of its water from domestic and irrigation purposes in Otero County to storage in the John Martin Reservoir in Bent County for fish propagation, wildlife development, and all other recreational uses. Statements of opposition were filed by Catlin and others. The objectors

moved for summary judgment. The water court determined that the chain of title to the water rights upon which the Catlin stock rights are based includes deeds limiting the use of the water to irrigating and domestic purposes on land in Otero County. Concluding that these limitations on the place and character of use were enforceable against the State as equitable servitudes, and that similar restrictions in Catlin's articles of incorporation and bylaws also were binding upon the State, the water court ruled that the requested change of water right was impermissible, granted summary judgment for the objectors, and dismissed the State's application on March 9, 1977.

After dismissal of Case No. W–4025 the State entered into a water exchange agreement with Ft. Lyon whereby the point of diversion for the State's Catlin water rights would be changed to the headgate of the Ft. Lyon Canal which is also located on the Arkansas River, 25 miles downstream from the Catlin Canal headgate. The water would be used for irrigation purposes on lands previously irrigated by use of the Ft. Lyon Canal in Otero County. In exchange, Ft. Lyon would make other water rights available to support diversions for storage in John Martin Reservoir.

In pursuance of this water exchange agreement, the State and Ft. Lyon applied to the water court in case No. 79CW27 for the necessary change in point of diversion of the State's Catlin water rights. Again, Catlin and others filed statements of opposition. Catlin moved to dismiss the application based on failure of the State to request Catlin's board of directors to approve the desired change. After an evidentiary hearing on that motion, the water court found that a Catlin bylaw required that any stockholder desiring to change the place to which water is to be delivered must make a written request to the Catlin directors to approve the change.[2] It concluded that the

---

1. As described herein, water court approval of a change in the place of use is also sought by the State. In the interest of brevity, and because the change in place of use is not directly in issue here, we frequently describe the State's

desired change simply as a change in the point of diversion.

2. The bylaw was in effect when the State purchased its stock.

bylaw applies to applicants for transfer both within and without the Catlin Canal system, and that compliance with the bylaw is a condition precedent to application to the water court for approval of the requested change of point of diversion. On October 10, 1979, when the court announced that conclusion, the State requested an opportunity to prove compliance with the bylaw. The hearing was continued to November 19, 1979, to consider that matter.

During the interval the State delivered a letter, dated October 15, 1979, to the Catlin board of directors requesting the change of point of delivery and offering conditions to protect the other stockholders against injury. Without admitting the applicability of the bylaw to a change of point of delivery of water to a location outside the Catlin Canal, the State sought approval by the Board pursuant to the bylaw. The board advised the State it would defer consideration of the matter until after the November 19 hearing. The hearing was concluded on November 19, and thereafter the trial court entered its order reaffirming its earlier conclusion that the bylaw was valid. The court found the State had not complied with the bylaw, and dismissed the application "without prejudice."

The application now before us was filed on December 20, 1979. It seeks the same change of water right requested in dismissed application No. 79CW27. In support of the requested change, the application alleged the October 15, 1979, written request to the Catlin board of directors for approval of the change of the place of delivery and claimed that the request is futile because three of the five members of the board of directors of Catlin collectively leased 1213 of the State's 2097.58 Catlin shares for one year, and expressed the belief that the directors would be prejudiced against the application by a desire to renew those leases. Catlin and numerous others filed statements of opposition to the petition.

Catlin then moved to dismiss or in the alternative for summary judgment, attaching documents reflecting the prior history of the requested change and alleging that Catlin's board of directors were taking steps to evaluate the request, but would need additional time to complete that evaluation. In support of that motion, documentation was presented showing that Catlin had employed an engineer to determine whether the requested change would result in injury to Catlin or its shareholders and, if so, whether conditions could be imposed that would enable the requested transfer to be accomplished without injury. The materials accompanying the motion also reflected that the State had been fully advised of these steps through attendance at the Catlin stockholders' annual meeting on December 3, 1979, where the State's request for a change in point of diversion, and the methods to be adopted by Catlin to evaluate that request, were discussed. The supporting documentation further reflected that the directors who had previously leased the State's Catlin water rights had not renewed their leases for 1980.

On August 15, 1980, the water court heard argument on Catlin's motion to dismiss or in the alternative for summary judgment. The court again concluded that the disputed bylaw provision was valid and binding on the State and that compliance is a condition precedent to an application to the water court for a change of water right. The court concluded that the bylaw requires that the Catlin board be given a reasonable time to act on the request and that passage of such reasonable time is a condition precedent to an application for judicial relief. It further found that nothing in the material submitted supported the State's claim that its request to the Catlin board of directors would be futile or that the directors were prejudiced. Because a reasonable time for the Catlin board to study the State's request had not expired, the water court dismissed the application "without prejudice." This appeal followed.

In this appeal the State and Ft. Lyon urge reversal of the trial court's judgment on the bases that (1) the Catlin bylaw should be construed as applicable to only those changes of points of delivery not in-

volving a transfer of water out of the Catlin Canal system, and (2) the water court's exclusive jurisdiction over an application for a change of water right is impermissibly infringed by a mutual ditch company bylaw purporting to require director approval before a change may be accomplished. We find these arguments unpersuasive.

## II.

█ We first address the contention that, by its own terms, the disputed bylaw applies only to changes of points of delivery within the Catlin Canal system. The challenged bylaw reads as follows:

Section 2: (as amended 12/4/61) Each holder of corporate stock shall be entitled to receive from the company's canal, water for domestic and irrigation purposes in the following amount: The proportion of the total water available to and deliverable by the company under the priorities of the company (or purchased or otherwise obtained by the company) which each stockholder's shares of stock bears to the total number of shares of stock issued and outstanding. *Each stockholder desiring to change the place to which any water he may be entitled shall be delivered, shall make written request therefor to the directors. If, in the opinion of the [directors], such transfer may be made without injury to the canal, the company or other stockholders, such water shall be then delivered to such place or places as requested.* Provided that in such case all other stockholders who are entitled to delivery of water at either the place or to which delivery is changed shall be notified in writing of such change. (Emphasis added.)

The trial court concluded that this bylaw applies to a transfer of a water right out of the Catlin Canal system as well as a change in the place of delivery within the system. We agree.

The bylaw applies to a change of "the place to which any water [to which a stockholder] may be entitled shall be delivered." Historically, water diverted on the basis of water rights evidenced by the State's Catlin stock has been delivered through the Catlin Canal and applied to croplands lying under the canal. The State requests that the water to which it is entitled be allowed to bypass the headgate of the Catlin Canal so that it can be taken from the Arkansas River downstream through the headgate of the Ft. Lyon Canal. The fact that delivery to the new point of diversion will not be accomplished through the Catlin Canal cannot be permitted to obscure the essential fact that a change in the place of delivery of the water is requested. The challenged bylaw makes no distinction between in-system and out-of-system changes in place of delivery. Based upon the plain meaning of the words used in the bylaw, the contemplated change constitutes a change of place of delivery of the State's water, and so is governed by the bylaw requirements.

The bylaw construction which we adopt is also consistent with the purpose of the requirement of director approval. The directors are to evaluate a requested change of place of delivery to determine whether it "may be made without injury to the canal, the company or other stockholders." Although the record does not supply the details of the operational interdependency of the various features of the Catlin Ditch system,[3] any alteration of the delivery point for one stockholder's water can be expected to have impact upon the ability of the Catlin Canal system to supply water to the other stockholders. *See generally, Model Land and Irrigation Co. v. Madsen,* 87 Colo. 166, 285 P. 1100 (1930). The possible adverse effects of removal of water from the ditch can reasonably be expected to be at least as severe as those following from an in-system change of place of delivery.[4] It is

**3.** The complexity of the determination of the effect of the change proposed here is reflected by the trial court's findings that an engineering study of the effect of the requested change on the Catlin Canal system would be detailed and complicated and that the Catlin Board had re-

ceived an estimate that the cost of such a study would be $15,000 to $20,000.

**4.** In recognition of the adverse effect of changes of points of delivery to locations outside the canal system upon the ability of a

consistent with the bylaw's purpose—to permit changes of place of delivery only where injury will not result—that the director approval requirement apply to a change of delivery to a location outside the Catlin Canal system as well as to in-system changes. Such a construction is consistent with the rule that contracts should be construed to give effect to the intention of the parties. *E.g., Griffin v. United Bank of Denver,* 198 Colo. 239, 599 P.2d 866 (1979); *Centennial Enterprise, Inc. v. Mansfield Development Co.,* 193 Colo. 463, 568 P.2d 50 (1977).

### III.

We next consider the contention of Ft. Lyon and the State that if the bylaw provision requires director approval of the requested change in point of diversion it impermissibly infringes upon the exclusive jurisdiction of the water judge. We do not agree.

It is unquestionably true that each water judge has exclusive jurisdiction over water matters within his water division. Section 37–92–203(1), C.R.S.1973. It is also indisputable that an application for a change in point of diversion is a water matter. *See* sections 37–92–103(5), and 302(1)(a), C.R.S.1973 (1981 Supp.). These statutory provisions confirm the long-standing rule that changes of water rights cannot be effected in any manner other than through judicial approval, following statutorily authorized procedures. *E.g., Corey v. Long,* 111 Colo. 146, 138 P.2d 930 (1943); *Dry Creek No. 2 Ditch Co. v. Coal Ridge Ditch Co.,* 109 Colo. 556, 129 P.2d 292 (1942); *Fluke v. Ford,* 35 Colo. 112, 84 P. 469 (1905). Commonly, this concept is expressed by saying the statutory procedures for changes of water rights are exclusive. *E.g., Corey v. Long, supra; The Wadsworth Ditch Co. v. Brown,* 39 Colo. 57, 88 P. 1060 (1907). There is no question but that to effect the desired change of water right the State

must obtain a decree from the water judge. But this does not dispose of the issue before this court. We must determine, in addition, whether a mutual ditch company bylaw purporting to further condition or limit the right to a change in point of diversion can be given effect consistent with allowing full scope to the jurisdiction of the water court.

The concept that the rights incident to water right ownership can be modified by private agreement is not novel. We have previously given effect to a mutual ditch company bylaw in a situation very similar to the one we face today. In *Model Land and Irrigation Co. v. Madsen, supra,* a mutual ditch company bylaw required board of directors' approval as a condition to a change in the place of use of a stockholder's water. A mutual ditch company brought suit to restrain a change in place of use by the stockholder in the face of the directors' disapproval of the requested transfer. The trial court dismissed the complaint and we reversed. After concluding that valid bylaws are binding on the stockholders, we held:

> The by-law in question is not against public policy or unreasonable. We have held that a contract between a ditch company and a landowner restricting the use of water to certain land is not unreasonable and against public policy. *Wright v. Platte Valley Irrigation Co.,* 27 Colo. 322, 61 Pac. 603. A similar construction should be given to the by-law, for "By-laws enter into the contract between the corporation and its stockholders or members." 1 Fletcher, Cyc. Corporations, § 501.

87 Colo. at 168, 285 P. at 1101; *see also Jacobucci v. District Court,* 189 Colo. 380, 541 P.2d 667 (1975).

The change at issue in *Model* would have resulted in the removal of water from the canal many miles above the original irrigated tract. We concluded that the board of

---

mutual ditch corporation to perform its essential function to distribute the water among the stockholders in the area served by its canal, California has declined to approve such transfers, *Consolidated People's Ditch Co. v. Foothill*

*Ditch Co.,* 205 Cal. 54, 269 P. 915 (1928), and Idaho has limited such transfer rights by statute to require mutual irrigation corporation approval. *See Application of Johnston,* 69 Idaho 139, 204 P.2d 434 (1949).

directors did not act arbitrarily in deciding that the transfer would injuriously affect the corporation and its stockholders:

> If permitted to [remove the water many miles higher on the canal], the volume of water flowing down the canal to the Model tract miles below would be diminished, thus increasing the loss by evaporation. Witnesses testified that the loss by evaporation and seepage would be greater if the water should be distributed in small amounts throughout the length of the canal, instead of being carried in a concentrated volume for use upon land in the Model tract, and also that the change would increase the cost of operation.

87 Colo. at 169, 285 P. at 1101–02.

Under these circumstances we held that the board of directors properly exercised the discretion given to it by the bylaws in refusing to permit the transfer and that the court was not justified in overriding the action of the board.

Ft. Lyon and the State argue that *Model* is distinguishable because the proposed change of water right at issue in that case was not subject to a statutory scheme providing for judicial review of the change in place of use. In contrast, the change in point of diversion proposed in the present case is governed by the Water Right Determination and Administration Act of 1969, section 37–92–101 *et seq.*, C.R.S.1973 (1981 Supp.) (Water Right Act), which requires judicial approval of a change in point of diversion. Ft. Lyon and the State contend that, as a result, this is not a permissible area for the operation of private agreements further restricting the right to a change of water right. They argue that such private agreements conflict with the purpose and full application of the exclusive procedure for water right determinations established by statute, and that we should restrict *Model's* application to the few remaining areas of water right determinations that are not covered by the Water Right Act. We do not agree that *Model* should be read so narrowly.

Although the Water Right Act provides protection against a change of water right that would injuriously affect other vested water rights or decreed conditional water rights, section 37–92–305(3), C.R.S.1973, this is not inconsistent with or frustrated by private agreements contractually limiting an owner's right to a change of water right so long as those limitations are reasonable. As the *Model* opinion recognized, severe adverse effects can result from a reduction in the volume of water flowing through a canal system. We are reluctant to deny force and effect to private agreements protecting against these adverse effects where those agreements supplement rather than frustrate the purposes of the Water Right Act.

Moreover, the unduly restrictive reading of *Model* suggested by Ft. Lyon and the State conflicts with the scope we have allowed to private agreements in other cases where the private agreement concerned a water right matter subject to judicial determination.

In *Perdue v. The Fort Lyon Canal Co.*, 184 Colo. 219, 519 P.2d 954 (1974), we held that a contract between two appropriators, Ft. Lyon and Perdue, by which the parties agreed that Ft. Lyon would have a priority in water rights over Perdue, should be given effect in determining the relative priorities resulting from a subsequent water right adjudication. *See also, Colorado River Water Conservation District v. Bar Forty Seven Co.*, 195 Colo. 478, 579 P.2d 636 (1978). If the private agreement in *Perdue* had been denied effect, Perdue would have been the senior appropriator with respect to Ft. Lyon. In the *Perdue* case we were faced with the argument, similar to that advanced by Ft. Lyon and the State in this case, that to allow the private agreement effect would conflict with the statutory procedure for determination of water rights. We stated:

> The Perdues cite 1969 Perm.Supp., C.R.S. 1963, 148–21–22 which states that priorities awarded in any year be junior to all priorities awarded in previous years and are junior to all priorities awarded in decrees entered prior to June 7, 1969. The water judge's ruling does not conflict

with this statute. By contract a person can make his priority inferior to another, and the water judge found that this happened here.

184 Colo. at 223, 519 P.2d at 956.

Very recently, in *Merrick v. The Fort Lyon Canal Co.,* Colo., 621 P.2d 952 (1981), we held that quantity and time of use restrictions in a water deed given by a ditch company through whose canals the water was to be supplied were binding on the successor in interest to the grantee. As a result the water right acquired by the deed could not be utilized in a plan for augmentation over the objection of the grantor's successor in interest in a manner inconsistent with the deed restrictions. There we stated:

> ... Merrick's statutory right to seek a plan for augmentation is subject to the terms of the agreement on which his claim for a water right is based. The water judge correctly refused to allow Merrick to propose terms and conditions for his plan for augmentation, based on the statute [section 37–92–305(3), C.R.S. 1973], which would have ignored the terms and conditions of the contract.

Colo. at n. 3; 621 P.2d at 955, n. 3.

Similarly, we have often given judicial recognition to contractual obligations of various sorts between the owner of a right to obtain water and the ditch company operating the canal through which the owner's water is transported. *See Green v. The Chaffee Ditch Co.,* 150 Colo. 91, 371 P.2d 775 (1962); *Wright v. The Platte Valley Irrigation Co.,* 27 Colo. 322, 61 P. 603 (1900); *Wyatt v. The Larimer and Weld Irrigation Co.,* 18 Colo. 298, 33 P. 144 (1893); *La Junta and Lamar Canal Co. v. Hess,* 6 Colo.App. 497, 42 P. 50 (1895).

■ Based on *Model,* reinforced as it is by *Perdue v. The Fort Lyon Canal Co., supra, Merrick v. The Fort Lyon Canal Co., supra,* and the other cases cited above, we

hold that, under the circumstances present in this case,[5] a mutual ditch company bylaw imposing reasonable limitations, additional to those contained in section 37–92–305, C.R.S.1973, upon the right of a stockholder to obtain a change in the point of diversion can be enforced. *See also, Costilla Ditch Co. v. Excelsior Ditch Co.,* 100 Colo. 433, 68 P.2d 448 (1937); *The Wadsworth Ditch Co. v. Brown, supra.*

We now direct our attention to the bylaw at issue here to determine whether it is reasonable. Considered in light of the purposes of mutual ditch companies, we conclude that it is.

A mutual ditch company is a cooperative venture typically created to finance the construction and maintenance of extensive ditch systems and to administer delivery of water through those ditches to its stockholders. *See generally, Jacobucci v. District Court, supra,* 189 Colo. at 385–86, 541 P.2d at 670–71; Moses, *Irrigation Corporations,* 32 R.M.L.Rev. 527 (1960). Because of the large capital requirements of such a project, the economies of scale resulting from a cooperative venture were essential to securing an adequate irrigation supply for development of the arid west. *Id.* The importance of such organizations, at least in earlier times, is further evidenced by the special statute enacted to facilitate the formation of mutual ditch companies. *See* section 7–42–101 *et seq.,* C.R.S.1973 (1981 Supp.) which has its roots in G.L. § 274 *et seq.* (1877). The board of directors of a mutual ditch company can be expected to be especially familiar with the ditch system and the probable effects of a transfer of some part of the canal system's water supply to a point outside the mutual ditch network. We perceive no public policy that would be offended by permitting the stockholders, by voluntary agreement in the form of a bylaw, to require that anyone seeking to change a point of diversion to a place outside the system first submit an

---

5. This is not a case in which the bylaw was not enacted until after the State acquired its stock. Compare this case with *Costilla Ditch Co. v. Excelsior Ditch Co., supra,* where we refused to enforce a mutual ditch company bylaw adopted

after a stockholder's acquisition of his stock and apparently intended to thwart that stockholder's desire to change the place of use. *See also, Knowles v. The Clear Creek, Platte River Mill & Ditch Co.,* 18 Colo. 209, 32 P. 279 (1893).

application to the board of directors for evaluation of the effect of the change on the rights of others dependent on the ditch for delivery of their water. Indeed, the process may promote dispute resolution, and the information so developed may prove useful in the later water court proceeding, facilitating a just and reasonable decree by the court.

Furthermore, we find nothing unreasonable in the bylaw criteria which the board is to apply. The directors were charged with evaluating the requested change to determine if it will cause injury to the canal, the company or other stockholders. The questions of injury are central to the fair and effective operation of what is inherently an interdependent undertaking for the delivery of water to a number of stockholders. We find no reason in public policy to deny the directors, pursuant to bylaw authorization, the right to review a proposed change of place of delivery to assure that it does not create the injury upon which the bylaw focuses.[6]

 It is well-settled that the owner of shares in a mutual ditch company has the same right to seek a change in the point of diversion of his water right as does any other appropriator. *The Wadsworth Ditch Co. v. Brown, supra; see Costilla Ditch Co. v. Excelsior Ditch Co., supra; Cf. Jacobucci v. District Court, supra,* (change in place of use). As in other applications for change in point of diversion, the right to effect the change is qualified by the requirements that the change must not injuriously affect others. *The Wadsworth Ditch Co. v. Brown, supra* ; section 37–92–305(3), C.R.S. 1973; *see, e.g., Weibert v. Rothe Bros., Inc.,* Colo., 618 P.2d 1367 (1980). The instant bylaw is consistent with these general principles. It does not oust the water court of jurisdiction, since the court retains jurisdiction over the statutory change in point of diversion proceeding as well as the effect to be accorded private agreements dealing with the proposed change. *See Perdue v. The Fort Lyon Canal Co., supra,* 184 Colo. at 222–23, 519 P.2d at 956. Nor does the reasonable bylaw at issue here conflict with the purposes of the Water Right Act or unduly interfere with the water court's exercise of its authority pursuant to that statute. Under these circumstances, we reject the contention of Ft. Lyon and the State that allowing effect to the Catlin bylaw conflicts with the jurisdiction of the water court.

Finally, should the directors disapprove the requested transfer we consider the question of the appropriateness of that disapproval to involve a "water matter" within the jurisdiction of the water court. Judicial economy would be promoted by permitting any challenge to director disapproval to be presented to the water court in the same proceeding as that in which a request for judicial approval of the director-disapproved change of water right is made. *See Perdue v. The Ft. Lyon Canal Co., supra.*

IV.

As the result of our conclusions, we hold that the contested bylaw provision is valid and enforceable. As the trial court concluded, the requirement that a proposed change of water right be submitted to the directors for approval necessarily implies a reasonable time for the directors to respond. Here the trial court found that the first request was made by a letter dated October 15, 1979, received by Catlin on October 22, 1979. On December 3, 1979, the Catlin board of directors was authorized by the stockholders to spend whatever sums may be necessary to obtain an engineering study of the effect of the proposed transfer. The trial court found that the necessary study would be complex and costly. The court concluded, and we agree, that a reasonable time was not allowed for board of directors' response before the instant case was commenced on December 20, 1979. Accordingly, the trial court was correct in dismissing this action.

We affirm the judgment of the trial court.

**6.** *See* Note 5, *supra.*