In the Matter of the Application for WATER RIGHTS OF the FORT LYON CANAL COMPANY and the State of Colorado, Department of Natural Resources, Division of Wildlife, in the Arkansas River, in Otero County.

The FORT LYON CANAL COMPANY; and State of Colorado, Department of Natural Resources, Division of Wildlife, Applicants–Appellants,

v.

CATLIN CANAL COMPANY; Arkansas Valley Ditch Association; Resource Investment Group, Ltd.; and City of Fountain, Objectors–Appellees,

and

Public Service Company of Colorado; and "Conexsel Group," Appearants–Appellees,

and

Robert W. Jesse, Division Engineer, Water Division 2, State of Colorado, Appellee.

No. 86SA301.

Supreme Court of Colorado, En Banc.

Oct. 17, 1988.

Calkins, Kramer, Grimshaw & Harring, Wayne B. Schroeder, John R. Moore, Denver, for applicant-appellant The Fort Lyon Canal Co.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., David A. Ladd, Asst. Atty. Gen., Denver, for applicant-appellant State of Colo., Dept. of Natural Resources, Div. of Wildlife.

Mitchell & Mitchell, P.C., Rexford L. Mitchell, Rocky Ford, for objectors-appellees Catlin Canal Co. and Arkansas Valley Ditch Ass'n.

Davis, Graham & Stubbs, William A. Hillhouse, II, Denver, for objector-appellee Resource Inv. Group, Ltd.

Saunders, Synder, Ross & Dickson, P.C., William B. Tourtillott, Jr., Melvin B. Sabey, Denver, for objector-appellee City of Fountain.

Kelly, Stansfield & O'Donnell, Timothy J. Flanagan, Denver, for appearants-appellees Public Service Co. of Colorado and "Conexsel Group".

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Wendy C. Weiss, First Asst. Atty. Gen., Denver, for appellee Robert W. Jesse, Div. Engineer, Water Div. 2, State of Colo.

LOHR, Justice.

This is an appeal by The Fort Lyon Canal Company (Fort Lyon) and the State of Colorado, Department of Natural Resources, Division of Wildlife (State), from a judgment of the District Court for Water Division 2 (water court) dismissing their application for a change of water right. The water right is represented by shares of capital stock in Catlin Canal Company (Catlin), a mutual ditch company. The water court based its judgment of dismissal upon its conclusion that the Catlin board of directors had acted within its discretion in disapproving the change pursuant to a Catlin bylaw requiring that any proposed change in place of delivery be submitted to the directors for a determination of whether the change may be made without injury to the canal, the company, or other stockholders. We conclude that the water court correctly determined that the review procedure prescribed by the bylaw was applicable to the proposed change of water right and applied the proper standard in reviewing the board's action pursuant to that bylaw. Accordingly, we affirm the judgment of dismissal.

I.

This case represents the latest in a series of efforts by the State to use its Catlin stock to provide a permanent pool in John Martin Reservoir in Bent County for fish propagation, wildlife development, and other recreational purposes. A summary of the history of these efforts will provide the

background necessary for an understanding of the present case. A more detailed description of the events is set forth in *Fort Lyon Canal Co. v. Catlin Canal Co.*, 642 P.2d 501 (Colo.1982).

Catlin is a mutual ditch company which owns a canal with a headgate on the Arkansas River in Otero County. The water diverted through the canal historically has been used to irrigate agricultural land in Otero County. In 1972, the State purchased 2,097.58 shares of stock in Catlin, representing 11.2% of the Catlin stock, with the purpose of utilizing the water rights represented by that stock to create a permanent pool for fish propagation, wildlife development, and other recreational purposes in John Martin Reservoir, located in Bent County downstream from the Catlin Canal headgate. Finding it necessary to change the point of diversion and the nature and place of use of its water right to implement this plan, the State applied to the water court for approval of a change of water right. Catlin and others objected. The water court denied the application, reasoning that the deeds in the chain of title to the water rights upon which the Catlin stock rights were based as well as Catlin's articles of incorporation and bylaws limit the place of use of the water to Otero County. The State did not appeal.

Attempting to solve the place of use problem that had proved fatal to its initial plan, the State entered into an exchange agreement in 1979 with Fort Lyon, a mutual ditch company which owned a canal with a headgate twenty-five miles downstream from the Catlin Canal headgate. Fort Lyon diverted water for agricultural use on lands in Otero County. Under the exchange agreement, the State would change the point of diversion and place of use of its Catlin water right to divert water through the Fort Lyon Canal headgate and irrigate some of the lands Fort Lyon had traditionally irrigated using its own rights. In turn, Fort Lyon would use its own water rights, which were not restricted to use in Otero County, to make available to Catlin a corresponding amount of water for the creation of the permanent pool in John Martin Reservoir. The State and Fort Lyon applied to the water court for the approval necessary to implement this exchange. Catlin and others filed statements opposing the change of water right relating to the State's shares in Catlin. The water court determined that the State had not complied with a provision of the Catlin bylaws requiring that any stockholder wishing to change the place of delivery of Catlin water must make written application to the Catlin board to approve the change.[1] The court therefore dismissed the application without prejudice. No appeal was taken.

About a month after the dismissal, Fort Lyon and the State again applied to the water court for the change of the Catlin water right necessary to implement the exchange agreement. The applicants alleged that approval of the change had been sought by written request to the Catlin board of directors, but that such request was futile because of alleged prejudice of some of the directors who collectively leased more than half of the State's Catlin shares for their own personal use. Catlin and others again filed statements of opposition to the change of water right application and Catlin moved to dismiss or for summary judgment. The water court determined that the disputed bylaw provision requiring that the approval of the Catlin

---

1. The bylaw at issue reads as follows:

 Section 2: (as amended 12/4/61) Each holder of corporate stock shall be entitled to receive from the company's canal, water for domestic and irrigation purposes in the following amount: The proportion of the total water available to and deliverable by the company under the priorities of the company (or purchased or otherwise obtained by the company) which each stockholder's shares of stock bears to the total number of shares of stock issued and outstanding. *Each stock-*

 *holder desiring to change the place to which any water he may be entitled shall be delivered, shall make written request therefor to the directors. If, in the opinion of the [directors], such transfer may be made without injury to the canal, the company or other stockholders, such water shall be then delivered to such place or places as requested.* Provided that in such case all other stockholders who are entitled to delivery of water at either the place or to which delivery is changed shall be notified in writing of such change. (Emphasis added.)

board be obtained for a change in place of delivery of water was valid and binding on the State. Hence, the State's compliance with that bylaw was deemed a condition precedent to an application to the water court for a change of water right. The court concluded that the Catlin board had not had reasonable time to act on the State's request. Furthermore, the court found nothing to substantiate the State's claim that its request to the Catlin board for approval of the change would be futile or that the directors were prejudiced. It therefore dismissed the application without prejudice. The State and Fort Lyon appealed, and we affirmed in an opinion issued on March 22, 1982. *Fort Lyon Canal Co. v. Catlin Canal Company*, 642 P.2d 501 (Colo.1982).

On April 30, 1982, the State and Fort Lyon filed yet another application for a change in the State's Catlin water right from use on lands under the Catlin Canal in Otero County to use on lands under the Fort Lyon Canal in Otero County. Catlin and others filed statements of opposition.[2] The water court denied this application, and the resulting judgment of dismissal is the subject of the appeal now before us.

The State and Fort Lyon initially sought the approval of the Catlin board for the desired change of water right by letter dated October 15, 1979. That letter included terms and conditions which the State contended would prevent whatever injury the proposed transfer threatened to the canal, the company, or the other stockholders. Thereafter, the board engaged an engineering firm to analyze the State's proposal. Based on the resulting engineering study, the board found the terms and conditions inadequate to prevent injury. In August 1983 the State and Fort Lyon submitted to Catlin a proposal containing new and different terms and conditions. Catlin again engaged an engineering firm to evaluate the new proposal. The engineering report was completed in March 1984. Based on that report as well as the board members' own experience and analysis, the

board concluded that the terms and conditions of the new proposal were still inadequate to prevent injury. The State and Fort Lyon then submitted a third version of their proposed terms and conditions. Catlin once more employed engineers to study the new proposal. The engineers submitted a report to Catlin in January 1985. The Catlin board of directors again determined, based on its own study and analysis and the engineering study, that the terms and conditions of the new application would not prevent injury to the canal, the company, and the other stockholders.

In the case now before us, the State and Fort Lyon sought to have all issues, including whether a change of water right could be granted in accordance with the criteria established by the Water Right Determination and Administration Act of 1969, §§ 37–92–101 to –602 (1973 & 1987 Supp.) ("Water Right Act"), determined in a single proceeding. The trial court, however, elected to bifurcate the trial and to determine first

> only the question of whether the Catlin Canal Company Board of Directors acted capriciously and arbitrarily in denying the State's request ...; in other words, if there was sufficient evidence available upon which the Board of Directors could have determined that there would be injury to the Catlin Canal, the Catlin Canal Company or its shareholders if it were to approve Applicants' request for transfer.

The matter thereafter proceeded to trial on the validity and effectiveness of the denial of the proposed change by the Catlin board of directors. Evidence was presented on the issue of whether the board of directors acted improperly in denying the State's request for change in place of delivery of its Catlin water. The trial court determined that the board of directors had not acted arbitrarily or capriciously or abused its discretion in finding that the terms and conditions proposed by the State and Fort Lyon would not be sufficient to prevent injury. The water court therefore upheld the board's decision to deny the

---

**2.** Statements of opposition were filed by Catlin, the Arkansas Valley Ditch Association, the City of Fountain, and the Resource Investment

Group, Ltd. Entries of appearance were filed on behalf of the "Conexsel Group" and the Public Service Company of Colorado.

request for change in place of delivery and dismissed the application of the State and Fort Lyon for a change of water right. This appeal followed.

## II.

■ The argument of the State and Fort Lyon, although phrased in various ways, essentially is that the owner of stock in a mutual ditch company has a water right that the owner is entitled to change if the change "will not injuriously affect the owner of or persons entitled to use water under a vested water right or a decreed conditional water right." *See* § 37–92–305(3), 15 C.R.S. (1973). To the extent that a mutual ditch company bylaw purports to impose additional restrictions on the change of a water right, the argument proceeds, those restrictions impermissibly infringe upon the jurisdiction of the water court to evaluate a proposed change under the criteria of section 37–92–305(3). We do not agree.

The argument of the State and Fort Lyon is simply a refinement of the arguments already advanced by them and rejected by us in *Fort Lyon Canal Co. v. Catlin Canal Co.*, 642 P.2d 501 (Colo.1982). There, we summarized the position of Fort Lyon and the State on this issue as "the contention ... that if the bylaw provision requires director approval of the requested change in point of diversion it impermissibly infringes upon the exclusive jurisdiction of the water judge." *Fort Lyon Canal Co.*, 642 P.2d at 506. In rejecting that position, we acknowledged the exclusive jurisdiction of the water judge over water matters, such as applications for changes of water rights, and that "changes of water rights cannot be effected in any manner other than through judicial approval, following statutorily authorized procedures." *Id.* at 506. We characterized the determinative question, however, as

whether a mutual ditch company bylaw purporting to further condition or limit the right to a change in point of diversion can be given effect consistent with allowing full scope to the jurisdiction of the water court.

*Id.* In resolving that question we noted that in *Model Land and Irrigation Co. v.*

*Madsen,* 87 Colo. 166, 285 P. 1100 (1930), we had previously given effect to a mutual ditch company bylaw requiring approval by the board of directors as a condition to a change in the place of use of a stockholder's water right. In that case we determined that such a bylaw is not against public policy. *Model,* 87 Colo. at 168, 285 P. at 1101. In support of that conclusion we noted the interdependency of the stockholders' interests in a mutual ditch company and the adverse effects of increased water loss through evaporation and seepage that can occur when the flow in a canal is significantly diminished. *Id.* at 169, 285 P. at 1101. Where such adverse effects were demonstrated to result from a proposed removal of water many miles above the original diversion site, the directors did not act arbitrarily in exercising their rights under the bylaw by rejecting a proposed change because of its injurious effect on the mutual ditch company and its stockholders. *Id.* at 168, 285 P. at 1101.

We also held in *Fort Lyon Canal Co.* that the Water Right Act, which requires judicial approval of a change of point of diversion, had not abrogated *Model.* We said:

Although the Water Right Act provides protection against a change of water right that would injuriously affect other vested water rights or decreed conditional water rights, section 37–92–305(3), C.R.S. (1973), this is not inconsistent with or frustrated by private agreements contractually limiting an owner's right to a change of water right so long as those limitations are reasonable. As the *Model* opinion recognized, severe adverse effects can result from a reduction in the volume of water flowing through a canal system. We are reluctant to deny force and effect to private agreements protecting against these adverse effects where those agreements supplement rather than frustrate the purposes of the Water Right Act.

*Fort Lyon Canal Co.*, 642 P.2d at 507.

■ We have also enforced private agreements of other kinds concerning water right matters subject to judicial determination. *See Merrick v. The Fort Lyon*

*Canal Co.,* 621 P.2d 952 (Colo.1981) (giving effect to quantity and time of use restrictions in a water deed); *Perdue v. The Fort Lyon Canal Co.,* 184 Colo. 219, 519 P.2d 954 (1974) (giving effect to private contract between two appropriators in determining relative priorities). In short, our cases demonstrate that a private agreement imposing reasonable limitations on the statutory rights of an appropriator will be given effect. We have specifically held the bylaw at issue in the present case to be consistent with public policy and enforceable. *Fort Lyon Canal Co.,* 642 P.2d at 508–09. We expressly rejected the claim, which Fort Lyon and the State once again advance in this case, that the Catlin bylaw effectively usurps the jurisdiction of the water court. *Id.* Moreover, we held that

> [s]hould the directors disapprove the requested transfer we consider the question of the appropriateness of that disapproval to involve a "water matter" within the jurisdiction of the water court. Judicial economy would be promoted by permitting any challenge to director disapproval to be presented to the water court in the same proceeding as that in which a request for judicial approval of the director-disapproved change of water right is made.

*Id.* at 509.

 The water court, following our instructions in *Fort Lyon Canal Co.,* reviewed the action of the board of directors to determine whether it had acted arbitrarily or capriciously or abused its discretion. We regard that to be the appropriate standard. *See Model Land and Irrigation Co. v. Madsen,* 87 Colo. at 169, 285 P. at 1101–02.

Our decision in *Fort Lyon Canal Co.* conclusively forecloses the various arguments of the State and Fort Lyon that the trial court improperly denied them a hearing on the merits of their application for change of water right by bifurcating the trial and considering only the question of compliance with the Catlin bylaw. In the

interests of judicial economy, the water court was free to consider first whether the State and Fort Lyon could implement the change of place of delivery of the Catlin water consistent with the Catlin bylaws. Only after the water court resolved that issue in favor of the State and Fort Lyon would it have needed to reach the further question of whether the proposed change of water right could be accomplished without injuriously affecting others, as required by section 37–92–305(3) of the Water Right Act. The arguments of the State and Fort Lyon that the water judge erred by requiring them to prove that the Catlin board of directors acted improperly before the court would hold a hearing on the merits of their application is essentially a restatement of an argument previously made and rejected, as is their contention that the Catlin bylaw is an unreasonable limitation on the right of the State and Fort Lyon to trial on the merits of the application and is therefore void as contrary to public policy. For over fifteen years the State has attempted to avoid the effect of the reasonable and enforceable Catlin bylaw provision —in effect when the State acquired its stock—restricting the State's ability to change the place of delivery of the Catlin water to which it is entitled. To accept the State's argument would be to ignore a clear line of precedent in this court and to disregard the expressed intentions of the parties as contained in the Catlin bylaws. We declined to follow this course in *Fort Lyon Canal Co.* and we adhere to our decision in that case.[3]

We affirm the judgment of the water court dismissing the application for a change of water right.

MULLARKEY, J., does not participate.

---

**3.** Fort Lyon and the State do not ask us to determine whether the evidence supported the water court's determination that the State and Fort Lyon had not carried their burden of showing that the board of directors of Catlin had

acted arbitrarily and capriciously or abused its discretion in denying the requested change of water right. The transcript of the trial was not made part of the record on appeal, so we could not consider that question in any event.