Concerning the Application for Water Rights of the City of Black Hawk for Conditional Direct Flow Water Rights and Conditional Water Storage Rights in Clear Creek and its Tributaries, in Gilpin and Clear Creek Counties.

**CITY OF BLACK HAWK,**
Applicant–Appellee

v.

**CITY OF CENTRAL,** Objector–Appellant,

and

City of Thornton; City of Westminster; City of Arvada; Coors Brewing Company; Consolidated Mutual Water Company; David Douglass; William C. Russell, Jr.; Michael Vincent; and Kimberly Vincent, Objectors–Appellees,

and

James R. Hall, Division Engineer for Water Division No. 1., Appellee Pursuant to C.A.R. 1(e).

No. 03SA295.

Supreme Court of Colorado, En Banc.

Sept. 13, 2004.

Harvey W. Curtis & Associates, Harvey W. Curtis, Patricia A. Madsen, David L. Kueter, Sheela Parameswar, Star L. Waring, Denver, Colorado, Attorneys for Applicant–Appellee City of Black Hawk.

Law Office of Stephen T. Williamson, Stephen T. Williamson, Matthew Machado, Louisville, Colorado, Attorneys for Objector–Appellant City of Central.

No Appearance by or on behalf of City of Thornton; City of Westminster; City of Arvada; Coors Brewing Company; Consolidated Mutual Water Company; David Douglass; William C. Russell, Jr.; Michael Vincent; Kimberly Vincent; and James R. Hall, Division Engineer for Water Division No. 1.

Justice BENDER delivered the Opinion of the Court.

## INTRODUCTION

In this case, we review the decision of the District Court, Water Division ("water court"), awarding the respondent City of Black Hawk a conditional water storage right in Chase Gulch Reservoir. We affirm.

■ An applicant seeks a conditional water right to preserve a place in Colorado's water priority system, and after such a right is recognized, the applicant must demonstrate in diligence proceedings that steps are being taken to bring waters covered by the right to beneficial use. According to the "can and will" statute, § 37–92–305(9)(b), 10 C.R.S. (2003), an applicant for a conditional water storage right must show that the waters can and will be stored and beneficially used and that the project can and will be completed with diligence and within a reasonable time. We have held that in determining whether an applicant has satisfied the can and will statute, the water court should consider whether the applicant has access, or the legal means to gain access, to the necessary property and whether the project is technically feasible.

Petitioner Central City argues that the water court's finding that Black Hawk satisfied the can and will statute was erroneous for two reasons: first, because Black Hawk did not establish a present right to access Chase Gulch Reservoir; and second, because Black Hawk did not show at trial that an enlargement of the existing reservoir is technically feasible. In addition, Central City argues that the water court erred in failing to require Black Hawk to amend and republish its application for a conditional storage right in the reservoir in light of a discrepancy between the location listed in Black Hawk's application and the intended, downstream location of the dam enlargement. We disagree and affirm the water court's rulings.

■ This Court defers to the water court's factual findings unless those findings are not supported by the record. Trial evidence established that a resolution passed by Central City denying Black Hawk access to the property underlying Black Hawk's conditional water storage right did not constitute a final denial of access. The water court was satisfied that Black Hawk was proposing to enlarge the existing reservoir and that Black Hawk's proposed enlargement was technically feasible. Thus, we conclude that the water court did not err in finding that Black Hawk satisfied the requirements of the can and will statute.

Further, we hold that the water court did not err when it concluded that the discrepancy between the location of the reservoir in Black Hawk's application and the intended, downstream location of the reservoir enlargement was "immaterial" and did not require amendment or republication of Black Hawk's initial application. In water proceedings, the reasonableness of notice to interested parties is determined by an inquiry standard. According to our precedent, neither the applicable notice provisions nor the can and will statute itself require an application for a conditional water decree to contain the level of detail necessary for the water project to be carried out immediately upon the grant of such a decree. In this case, Black Hawk's application provided interested parties with the appropriate inquiry notice of the nature of its proposed conditional water storage right in Chase Gulch Reservoir. In addition, because the parties consented to try the issue of the reservoir enlargement at the intended, downstream site, the trial court was correct in not requiring Black Hawk to amend its initial application. Republication was not necessary because the trial record reveals that no party will be injured by this discrepancy.

Accordingly, we affirm the decision of the water court and return the case to that court for further proceedings consistent with this opinion.

## FACTS AND PROCEEDINGS BELOW

Black Hawk and Central City are Colorado municipalities that lie adjacent to each other in the mountains of Gilpin County. Both towns inhabit the same valley in the South Platte River Basin, and both rely on water

from Chase Gulch, which flows into Chase Gulch Reservoir.

■ At present, Chase Gulch Reservoir has a storage capacity of 602 acre-feet of water. Central City owns the property underlying the reservoir, and it currently has 580 acre-feet of conditional water storage rights in the reservoir. Central City has proposed to enlarge the reservoir to hold 1,117 acre-feet of water. Additionally, Central City has performed geological tests on the reservoir suggesting that it could be expanded to a capacity of 1,117 acre-feet.[1]

In 1992, Black Hawk filed an application for, among other things, a 600 acre-feet conditional water storage right in Chase Gulch Reservoir pursuant to the Water Right Determination and Administration Act, § 37-92-101, 10 C.R.S. (2003). Although several parties initially opposed Black Hawk's application, all but Central City settled with Black Hawk, leaving Central City as the only objector at trial.

Black Hawk's filing mirrored a 1991 filing by Central City for a conditional water storage right in Chase Gulch Reservoir. However, Black Hawk's filing did not track an amendment to Central City's application that moved the proposed reservoir downstream. Central City had filed the amendment to its initial application after performing geological tests that revealed problems with the upstream site.

Nine days before trial, Central City's city council passed a resolution stating, "Central will not enter agreements to allow third parties to use real estate interests to construct other water projects not filed for adjudication by Central." Central City argued that this resolution precluded Black Hawk from gaining access to the property underlying its proposed conditional water storage right. The mayor of Central City testified that the attorney representing the city in this water dispute against Black Hawk "requested that we pass a resolution from the city council that was stating that, you know, we in effect, needed all of our water rights." On cross-examination, the mayor admitted that this resolution may not bind future city councils.

At trial, Central City's expert testified that Chase Gulch Reservoir could be enlarged to accommodate 1,117 acre-feet of water storage capacity. However, Black Hawk proposed to enlarge the reservoir by 600 acre-feet of storage capacity, which would bring the total storage capacity of the reservoir from 602 to 1,202 acre-feet, some eighty-five acre-feet larger than the reservoir capacity that Central City's expert testified was technically feasible.[2] In response, Black Hawk's expert, who relied in part on Central City's evidence of technical feasibility, testified that the proposed enlargement of the reservoir by 600 acre-feet would be technically feasible.

Central City's counsel, along with the experts for both Black Hawk and Central City, repeatedly referred to Black Hawk's plan to accommodate its proposed conditional storage right in Chase Gulch Reservoir as an enlargement of the existing reservoir. When cross-examining Black Hawk's expert, Central City's counsel referred to Black Hawk's plan using the phrases the "Chase Gulch Reservoir enlargement" and the "proposed Black Hawk enlargement of Chase Gulch Reservoir." Central City's counsel asked Black Hawk's expert: "Have you done any technical work to determine whether or not Black Hawk's proposed enlargement of

---

1. Central City's conditional storage decree is senior in priority to Black Hawk's conditional storage decree. Based on priority, Central City has the better right to use the capacity of the Chase Gulch storage site. However, Black Hawk's conditional storage decree could become operative if Central City does not place all of its conditionally decreed water to beneficial use. The can and will test, as to water available for appropriation, does not consider conditional rights but only absolute water rights perfected by application to beneficial use. *Bd. of County Comm'rs of Arapahoe County v. United States*, 891 P.2d 952, 962 (Colo.1995).

2. In the direct examination of Central City's expert, Central City's counsel asked whether Black Hawk would be able to enlarge the 1,117 acre-feet capacity reservoir that Central City had planned by an additional 600 acre-feet of capacity, for a total capacity of 1,717 acre-feet. However, the testimony of both Central City's and Black Hawk's experts at trial indicated that Black Hawk was proposing to enlarge only the existing reservoir, which would result in a total capacity of 1,202 acre-feet.

Chase Gulch Reservoir is technically feasible?"

Central City's counsel then asked: "So what would Black Hawk propose to build [at Chase Gulch Reservoir]?" The expert answered: "It would be an enlargement, . . . and we agree to the technical feasibility of enlarging the reservoir and—I mean, it's feasible to enlarge that reservoir. Central City has a similar plan, as I recall." Central City's counsel later asked: "Is it your opinion that it's technically feasible to enlarge the reservoir an additional 600 acre-feet?" Black Hawk's expert responded: "Beyond its current capacity, approximately 600 acre-feet."

At the close of Black Hawk's case, Central City's counsel moved for dismissal, arguing, "[T]here is absolutely no reason to believe that Black Hawk could get the land necessary to build any enlargement there." The water court rejected Central City's motion, stating, "I conclude that the fact that there is a reservoir already there is some evidence that it can be enlarged."

Later in the trial, Central City's counsel asked his own expert, "What does Black Hawk propose to do [with the Chase Gulch Reservoir claim]?" The expert answered: "My understanding is that they propose to enlarge the existing reservoir that's there."

The water court entered a decree awarding the City of Black Hawk, among other things, a 600 acre-feet conditional water storage right in Chase Gulch Reservoir. The water court found that Black Hawk's proposed appropriation was not speculative and that Black Hawk satisfied the requirements of the can and will statute. The water court reasoned that Black Hawk had satisfied its burden of proving it could gain access to the

reservoir either through consent or through its condemnation powers. The court stated: "As the needs of Central City and the composition of the City Council change, so may the City's policy with respect to the use of the Chase Gulch Reservoir site by other parties."

The water court also found that Black Hawk's proposed enlargement of Chase Gulch Reservoir was technically feasible. It considered the expert testimony, including the evidence presented by Black Hawk's expert, in addition to the existence of the current storage capacity of Chase Gulch Reservoir, as evidence that the reservoir could be enlarged. In a subsequent order, the water court reiterated that the enlargement was technically feasible. Acknowledging that Central City had presented evidence that the enlargement would be "technically challenging and financially burdensome," the court concluded that Black Hawk possessed sufficient resources to address technical challenges and contingencies in the proposed enlargement.

Nine months after trial, Central City filed a motion to reconsider the water court's order granting Black Hawk conditional water storage rights in Chase Gulch Reservoir. In this motion Central City admitted that the location of the proposed conditional water storage right listed in Black Hawk's application was "well within the existing high water line" of Chase Gulch Reservoir[3] but stated that it was in a different quarter section and 670 feet upstream from the dam for the existing reservoir. As a result, Central City claimed that a discrepancy exists between the location listed in Black Hawk's application and in the intended, downstream site of the dam enlargement.[4]

3. The relevant portion of Central City's motion to reconsider stated the following:
   Construction of [Black Hawk's project] at the location claimed in the applications . . . would require building a dam in the middle of the existing Chase Gulch Reservoir owned by Central [City]. . . . The dam site claimed [by Black Hawk] in the application and proposed decree in this [case] is in a different quarter section and approximately 670 feet upstream of the existing [reservoir], but is well within the existing high water line of [the reservoir].

4. In its motion to reconsider the water court's order, Central City did not argue that Black

Hawk should be required to amend and republish its initial application. This argument was made for the first time on appeal. Instead, Central City asserted that the site discrepancy made Black Hawk's proposed water storage right technically infeasible because it "would require building a dam in the middle of the existing Chase Gulch Reservoir." In denying Central City's motion to reconsider, the water court stated that Black Hawk would have been entitled to relation back of an amendment reflecting the intended dam location.

The water court denied this motion. It ruled that Central City failed to raise the issue of the discrepancy at trial, and it refused to admit new evidence based on this allegation. The water court concluded that the discrepancy was "immaterial." Accordingly, the water court's decree reflected the location of the reservoir listed in Black Hawk's initial application rather than the intended, downstream location of the existing dam.

Central City now appeals, arguing that the water court erred in finding that Black Hawk satisfied the requirements of the can and will statute and that the discrepancy between the location listed in Black Hawk's initial application and the intended, downstream dam enlargement was immaterial.[5]

## ANALYSIS

### The Can and Will Statute

Central City challenges the water court's findings regarding Black Hawk's ability to satisfy the can and will statute with respect to its conditional water storage right at Chase Gulch Reservoir. Central City argues that Black Hawk did not satisfy the requirements of the can and will statute because it did not prove that it had access to the property underlying the disputed water storage right and because it did not introduce sufficient evidence to prove that the proposed enlargement of the reservoir was technically feasible.

Initially, we note that our standard of review requires us to accept the water court's factual findings on appeal "unless they are so clearly erroneous as to find no support in the record." *In re Gibbs*, 856 P.2d 798, 801 (Colo.1993).

■ A conditional water right preserves an applicant's position in Colorado's water priority system while the applicant takes the necessary steps—such as satisfying applicable financing, engineering, regulatory, and access requirements—to put the subject waters to beneficial use. *See Dallas Creek Water Co. v. Huey*, 933 P.2d 27, 35 (Colo.1997). After a conditional water right has been awarded, the water court monitors the applicant's progress in pursuing these steps through diligence proceedings by evaluating whether that right is being developed in a manner calculated to result in placing the subject waters to the beneficial use contemplated in the conditional decree. *Id.* at 36.

Pursuant to the can and will statute, an applicant may not be awarded a conditional water storage right unless it can be shown that the waters can and will be stored and beneficially used and that the project can and will be completed with diligence and within a reasonable time:

No claim for a conditional water right may be recognized or a decree therefor granted except to the extent that it is established that the waters can and will be diverted, stored, or otherwise captured, possessed, and controlled and will be beneficially used and that the project can and will be completed with diligence and within a reasonable time.

§ 37-92-305(9)(b).

■ In *City of Thornton v. Bijou Irrigation Co.*, we stated that the can and will

---

**5.** The petitioners raise the following three issues in this appeal:

1) Whether the water court erred in its application of the "can and will" test when it granted to applicant, a home rule city, a conditional water storage right, where the applicant city must "wait and see" whether it can gain access to the necessary land through future condemnation or negotiations with the landowner, which landowner is another home rule city that has constructed its own reservoir on said land to supply water to its water service area and has expressly denied use of the land.

2) Whether the water court erred in its application of the "can and will" test when it granted applicant a conditional water storage right, when the applicant presented no

evidence of technical feasibility of the required construction at the decreed site and objector presented site-specific evidence that the water project upon which the conditional right is to be based is technically infeasible.

3) Whether the water court erred by granting a conditional water storage right without requiring the applicant to amend its application pursuant to Uniform Local Rules for All State Water Court Divisions, Rule 4(b)(1) and (b)(3), where the application claimed a free-standing reservoir at an upstream location and the water court found that the applicant intended to build an enlargement of an existing reservoir located approximately 670 feet downstream in a different quarter-quarter section.

statute requires "an applicant for a conditional water right decree to establish that there is a substantial probability that within a reasonable time the facilities necessary to effect the appropriation can and will be completed with diligence." 926 P.2d 1, 42–43 (Colo. 1996) (quoting *Bd. of County Comm'rs of Arapahoe County v. United States*, 891 P.2d at 961 (Colo.1995)). Nevertheless, we recognized in that case that "[p]roof of such a substantial probability" necessarily involves "imperfect predictions of future events and conditions."[6] *Id.* at 43. Accordingly, we concluded that "the 'can and will' requirement should not be applied rigidly to prevent beneficial uses where an applicant otherwise satisfies the legal standard of establishing a nonspeculative intent to appropriate for a beneficial use." *Id.*

### The Water Court Did Not Err in Finding that Black Hawk Satisfied the Can and Will Statute Regarding Access to the Reservoir

■ Central City argues that the water court erred in finding that Black Hawk could obtain access to Chase Gulch Reservoir. We have stated that "[t]he ownership of and an applicant's right of access to a reservoir site are appropriate elements to be considered in the determination of whether a storage project will be completed." *FWS Land & Cattle Co. v. State Div. of Wildlife*, 795 P.2d 837, 840 (Colo.1990). We later described a party's "present right and prospective ability" to access water storage facilities as a "relevant" but "not necessarily determinative" element of the applicant's proof. *Bijou Irrigation*, 926 P.2d at 43 (citing *Gibbs*, 856 P.2d at 802–03).

■ Thus, whether an applicant may access property underlying a proposed conditional water storage right is one factor a court should consider in deciding whether an application for a conditional water storage right meets the can and will test. However,

a party's present right and prospective ability to access the property are not conclusive in determining whether the can and will test has been met.

Central City argues that this Court's decisions in *West Elk Ranch, L.L.C. v. United States*, 65 P.3d 479, 481–83 (Colo.2002), and in *FWS* require us to reverse the water court's finding regarding Black Hawk's access to the reservoir. In each of those cases, the applicants were private entities that were denied governmental authorization to access property underlying a proposed conditional water right. Central City argues that because it passed a resolution declaring its intent not to enter into agreements with third parties seeking to use its property to construct water storage facilities, its resolution has the same effect of denying access to property as the governmental denials of authorization in *West Elk* and *FWS*. We disagree.

In describing our holdings in *West Elk* and *FWS*, we have emphasized that the governmental denials of access to property in both of those cases were final. *In re Vought*, 76 P.3d 906, 914 (Colo.2003) ("In the cases where we found that the can and will requirement was not satisfied, ... the denial was final.").

In *West Elk*, this Court affirmed the water court's grant of summary judgment in favor of the United States Forest Service where it was undisputed that the Forest Service had issued a final denial to West Elk, which was seeking access to Forest Service lands underlying its proposed water diversion and collection system. 65 P.3d at 480. In that case, West Elk acknowledged that its application for a conditional water right would require Forest Service approval, and it filed an application with the Forest Service to gain access to Forest Service lands. Citing concerns over the environmental impact of the proposed system, a Forest Service District

---

6. As is the case here, *Bijou* involved, in part, a municipality's application for conditional water rights. In *Bijou*, it was undisputed that a number of contingencies had not been resolved with respect to Thornton's application for conditional water rights, "including the future acquisition of additional replacement supplies, storage capaci-

ty, and contracts with other water users." 926 P.2d at 43. Despite the existence of these contingencies, which were outside of Thornton's control, we approved the water court's finding that Thornton had satisfied the requirements of the can and will statute and its decree of conditional water rights in favor of Thornton. *Id.* at 42–46.

Ranger denied West Elk's application. After allowing West Elk to provide additional information and ask for reconsideration of the denial, the District Ranger again denied the application. West Elk then challenged the denial before a Forest Service Supervisor, who issued a final denial of West Elk's application. West Elk did not seek judicial review of the Forest Service's final denial. Because West Elk's application for a conditional water right depended on its obtaining permission from the Forest Service to access federal lands, and because that permission was denied by the Forest Service and the denial became final as a matter of law, the water court denied West Elk's application. *Id.*

Similarly, in *FWS,* this Court affirmed the water court's grant of summary judgment in favor of the Colorado Division of Wildlife where the Division denied FWS access to state lands. 795 P.2d 837. In opposing FWS's application for conditional water storage rights, the Division "filed affidavits in support of its motion for summary judgment that stated that FWS did not have permission to use the state lands underlying the reservoir to increase the effective storage capacity of the lakes *and would not receive such permission in the future.*" *Id.* at 840 (emphasis added). Based on the affidavits, the water court found that FWS did not have permission to use the state lands for expanded storage purposes. *Id.* at 839.

Unlike *West Elk* and *FWS,* this case does not involve a final denial of access to state or federal property. Here, even though Black Hawk's claim for a conditional water right in Chase Gulch Reservoir had been filed a decade before, Central City waited until nine days before trial to pass a nonbinding resolution stating that it would not enter into agreements with third parties seeking to use its property interests to construct water projects. The resolution was general in nature and referred to neither Black Hawk nor Chase Gulch Reservoir. The mayor of Central City admitted that the resolution may not bind future city councils. In light of this

testimony, the water court found that Black Hawk satisfied the access to property element of the can and will test.

After reviewing the evidence presented at trial, we hold that the water court did not err in finding that Black Hawk adequately satisfied the access to property requirement of the can and will statute. The court's finding was not "so clearly erroneous as to find no support in the record." *Gibbs,* 856 P.2d at 801. We base this holding on the fact that lack of current access to property is not typically dispositive of whether the can and will test is satisfied, and on the water court's finding that Black Hawk had satisfied all of the other requirements of the can and will statute. In addition, our holding relies upon a recognition that the can and will statute should not be rigidly applied in cases not involving speculation [7] and that the existence of contingencies in a water application does not prevent the can and will test from being satisfied.

Central City also argues that because of its nonbinding resolution denying Black Hawk access to the reservoir, Black Hawk's only potential right of access is through condemnation of Central City's property. Because we hold that the water court did not err in finding that Black Hawk presented adequate evidence regarding access to satisfy the can and will statute, we do not decide the issue of whether Black Hawk could condemn Central City's property.

### The Water Court's Finding that Black Hawk's Proposed Enlargement of the Reservoir Was Technically Feasible Was Not Erroneous

◼ Next, Central City argues that the water court erred in finding that Black Hawk introduced sufficient evidence showing that enlargement of the reservoir is technically feasible.

◼ This Court has regarded technical feasibility as an appropriate factor for the water court to consider in determining whether an applicant for a conditional water

---

**7.** In this appeal, Central City does not challenge the water court's finding that Black Hawk's pro-

posed appropriation is not speculative.

right has satisfied the requirements of the can and will statute. See *Mun. Subdist., N. Colo. Water Conservancy Dist. v. OXY USA, Inc.*, 990 P.2d 701, 708 (Colo.1999).

Central City's expert testified that the Chase Gulch Reservoir could be enlarged to accommodate 1,117 acre-feet of water storage capacity, which is eighty-eight acre-feet less capacity than Black Hawk's proposed enlargement. Central City's expert explained that Black Hawk's proposed enlargement would be technically challenging and financially burdensome. In response, Black Hawk's expert testified that the proposed enlargement of the reservoir by approximately 600 acre-feet would be technically feasible.

After reviewing the water court's ruling and the evidence presented regarding technical feasibility, we affirm the water court's finding that Black Hawk had presented sufficient evidence of technical feasibility to satisfy the requirements of the can and will statute. Our review of the record reveals that this finding by the water court is adequately supported by the evidence presented.

### The Water Court Did Not Err in Finding that the Site Discrepancy Was Immaterial

■ Central City makes three arguments that the water court erred in ruling that the discrepancy between the location listed in Black Hawk's initial application and the intended, downstream site of the dam enlargement was immaterial. First, Central City argues that Black Hawk failed to satisfy the notice requirements governing water proceedings. Second, Central City contends that this Court's decision in *Danielson v. Jones*, 698 P.2d 240 (Colo.1985), precluded the parties from trying the issue of the proposed enlargement at the intended, downstream site by consent pursuant to Colorado Rule of Civil Procedure Rule 15(b). Third, Central City argues that the water court erred by not requiring Black Hawk to repub-

lish its application in light of the discrepancy between the water storage location listed in Black Hawk's application and the intended, downstream location of the dam enlargement. We disagree with each of these arguments.[8]

■ We turn first to the issue of whether Black Hawk's application provided notice to interested parties of the nature of its proposed conditional water storage right in Chase Gulch Reservoir. Whether an application for water rights provides adequate notice to interested parties depends on the facts and circumstances of a given case. *See Closed Basin Landowners Ass'n v. Rio Grande Water Conservation Dist.*, 734 P.2d 627, 633 (Colo.1987). In water proceedings, we determine what constitutes reasonable notice to interested parties based on an inquiry standard—i.e., "whether the notice is sufficient to reveal to potential parties the nature of the claim being made, so that such parties can determine whether to conduct further inquiry into the full extent of those claims so a determination can be made whether to participate in the proceedings." *In re Water Rights of Columbine Assocs.*, 993 P.2d 483, 489–90 (Colo.2000). In cases where notice was inadequate, the applicants' filings were "characterized by the complete absence of material information concerning the disputed water rights." *Bijou Irrigation*, 926 P.2d at 26. Therefore, if an application for a water right provides notice that a claim may be subject to dispute, then interested parties must be diligent in investigating that claim. *Id.* at 25.

According to our precedent, neither the applicable notice provisions nor the can and will statute itself requires an application for a conditional water decree to contain the level of detail necessary for the water project to be carried out immediately upon the granting of such a decree. *See Dallas Creek*, 933 P.2d at 35–36. For example, an applicant proposing to build a water project often waits to proceed with the detailed testing, design, and permitting necessary to determine the pre-

8. Additionally, we note that Central City makes these arguments for the first time on appeal. In its motion to reconsider, Central City contended only that the site discrepancy made Black Hawk's proposed water storage right technically

infeasible. However, we address these arguments because the order denying Central City's motion to reconsider stated that Black Hawk would have been entitled to relation back of an amendment reflecting the intended dam location.

cise location and configuration of water structures until receiving a conditional decree. Similarly, when an applicant proposes to build or construct a reservoir, parties that object to the proposal at the conditional decree stage often agree to drop their objections or participate in the project at a later stage. Recognizing the nature of this process and the importance of water storage in Colorado, the General Assembly recently directed that "[s]tate agencies shall, to the maximum extent practicable, cooperate with persons desiring to acquire real property for water storage structures." Ch. 189, sec. 3, § 37–87–101(1)(b), 2003 Colo. Sess. Laws 1367, 1368.

In this case, Black Hawk's application provided interested parties with notice of its claim for a conditional water storage right in Chase Gulch Reservoir. Both the initial application and the water court's decree included "Chase Gulch Reservoir" in the name of the reservoir. Central City stated in its motion to reconsider that the reservoir location listed in Black Hawk's application was "well within the high water line" of the existing reservoir. This description provided notice to interested parties that the proposed enlargement was to occur at the reservoir site. Thus, Black Hawk's application provided sufficient notice to interested parties about the nature of its claim, so that such parties could inquire further into the claim and decide whether to participate in the proceedings. Unlike those cases in which notice to interested parties was inadequate, Black Hawk's application was not characterized by a complete absence of material information concerning its proposed conditional water storage right.

In ruling on this issue, the water court stated that Central City failed to raise the site discrepancy issue in a timely manner because it did so nine months after trial.

The water court also noted that the parties at trial understood the location of the proposed enlargement by their testimony and conduct at trial. The court recited portions of the expert testimony presented and the statements of Central City's counsel establishing that Black Hawk was proposing to enlarge the Chase Gulch Reservoir. Accordingly, it found that the site discrepancy was "immaterial," and it did not require Black Hawk to amend or republish its initial application. We agree and affirm the water court's reasoning that the discrepancy between the application and the proposed project was immaterial and, thus, required neither amendment nor republication of Black Hawk's application.

Turning next to whether the issue of the dam enlargement at the downstream site was tried by consent of the parties, we conclude that the water court was correct in not requiring Black Hawk to amend its initial application. According to Rule 15(b) of the Colorado Rules of Civil Procedure, a party need not amend its pleadings to conform to the evidence presented at trial "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties."[9] Contrary to Central City's contention, we do not read our decision in *Danielson v. Jones* to mean that in every case the application of Rule 15(b) will conflict with statutory notice requirements for water proceedings. In *Danielson*, we stated in a footnote that an applicant for a proposed water right for his fish ponds could not avail himself of Rule 15(b) because his initial application did not include the proposed right and thereby failed to comply with the notice requirements of the relevant water statutes. 698 P.2d at 244 n. 5. However, in light of our cases holding that inquiry notice is the proper standard for determining whether interested parties have received notice in water proceedings,[10] we

9. The Colorado Rules of Civil Procedure apply in water court proceedings unless they are inconsistent with the provisions of water statutes and rules. *C.R.C.P. 81(a)*. Rule 15 allows a party to amend its pleadings to conform to the evidence presented at trial. However, Rule 15(b) states, "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." C.R.C.P. 15(b).

Rule 15(b) proceeds to explain that a party may move the court to amend the pleadings to conform to the evidence "at any time," but that a failure so to amend does not affect the result of the trial of these issues. *Id.*

10. *Columbine Assocs.,* 993 P.2d at 489–90; *Bijou Irrigation,* 926 P.2d at 25–26; *Monaghan Farms, Inc. v. City & County of Denver,* 807 P.2d 9, 17

conclude that a change to an application for water rights may be tried by the parties to a water court proceeding by express or implied consent pursuant to Rule 15(b) where interested parties receive sufficient notice to reveal the nature of the proposed claim, so that such parties can determine whether to inquire further into such claims and whether to participate in the proceedings.

The record leaves no doubt that Central City and Black Hawk consented to try the issue of the reservoir enlargement at the downstream site pursuant to Rule 15(b). Because of this fact, coupled with our holding that Black Hawk's application provided interested parties with inquiry notice of their proposed enlargement of the reservoir, the water court was correct in not requiring Black Hawk to amend its application.

Lastly, Central City argues that the water court erred in not requiring Black Hawk to republish its initial application because the water court's procedural rules require an application for a conditional water storage right to be republished when there is a change of over 200 feet in structure location, or when a structure is moved to a different quarter section. State Water Ct. Div. Unif. Local R. 4(b). However, the water court's procedural rules also state that an application for water rights need not be republished "[u]pon a showing that no person will be injured." State Water Ct. Div. Unif. Local R. 4(c). As a result of Central City's failure to raise the issue of the site discrepancy until nine months after trial, the water court declined to admit new evidence regarding the amount of the discrepancy.

Accordingly, there exists no basis in the record, other than Central City's bare allegation, to conclude that the site discrepancy requires republication. Moreover, because we concluded that Black Hawk's application provided notice to interested parties about the nature of its proposed conditional storage

right, and because the water court found that the site discrepancy was "immaterial," we hold that the water court was correct in not requiring Black Hawk's application to be republished.[11]

## Conclusion

For the reasons stated above, we affirm the decision of the water court and return the case to that court for further proceedings consistent with this opinion.

(Colo.1991); *Closed Basin Landowners Ass'n,* 734 P.2d 627, 635.

11. Because Central City argues for the first time on appeal that the water court erred by not requiring Black Hawk to amend and republish its initial application, the water court did not make particularized findings regarding whether any parties would be injured by the site discrep-

ancy. However, after reviewing the record in its entirety, and considering Central City's failure to raise the issue until this appeal, we are satisfied that the water court's finding that the site discrepancy was "immaterial" satisfies the inquiry under Rule 4(c) as to whether any parties would be injured.