Concerning the Application for Water Rights of Farmers Reservoir and Irrigation Company; Burlington Ditch, Reservoir and Land Company; Henrylyn Irrigation District; United Water and Sanitation District; and East Cherry Creek Valley Water and Sanitation District in Adams, Arapahoe, Denver, Douglas, Elbert, Jefferson, and Weld Counties.

CITY OF ENGLEWOOD,
Opposer–Appellant

v.

BURLINGTON DITCH, RESERVOIR AND LAND CO.; Farmers Reservoir and Irrigation Co.; United Water and Sanitation District; Henrylyn Irrigation District; and East Cherry Creek Valley Water and Sanitation District, Applicants–Appellees;

and

Metro Wastewater Reclamation District; Public Service Company of Colorado; Town of Lochbuie; Platte Valley Irrigation Co.; City of Aurora; Golf Course Heritage Todd Creek; Todd Creek Farms Metro District; Centennial Water and Sanitation District; City of Boulder; Harmony Ditch Company; Irrigationists' Association; City of Thornton; State Board of Land Commissioners; Colorado Division of Wildlife; City of Blackhawk; City and County of Broomfield; City and County of Denver Water Board; City of Brighton; Lower Latham Reservoir Company; Aggregate Industries–WCR, Inc.; Albert Frei and Sons, Inc.; Henderson Aggregate Ltd; HP Farms, Inc.; PV Water Holdings, LLC; Adams County Board of Commissioners; Riverside Irrigation District; Riverside Land Co.; Brighton Ditch Company; Parker Water and Sanitation District; Platte Valley Irrigating and Milling Co.; Central Colorado Water Conservancy District; South Adams County Water and Sanitation District; Rangeview Metropolitan District; Equus Farms Inc.; State Water Engineer; Fulton Irrigation Ditch Co.; City of Greeley; Northern Colorado Water Conservancy District; Bijou Irrigation Company; Bijou Irrigation District; City of Commerce City; David Dechant; Consolidated Ditches Company of District No. 2; City of Sterling; and Arapahoe County Water and Wastewater, Opposers–Appellees;

James Hall, Division Engineer for Water Division No. 1., Appellee Pursuant to C.A.R. 1(e).

No. 09SA75.

Supreme Court of Colorado,
En Banc.

June 21, 2010.

Berg Hill Greenleaf & Ruscitti LLP, David G. Hill, Jon N. Banashek, Heidi C. Potter, Boulder, Colorado, Attorneys for Opposer–Appellant City of Englewood.

Denver Water Board, Patricia L. Wells, Casey S. Funk, Daniel J. Arnold, Michael Walker, Denver, Colorado, Attorneys for Opposer–Appellee City and County of Denver acting by and through its Board of Water Commissioners.

Akolt & Akolt, LLC, John P. Akolt, III, Brighton, Colorado, Attorneys for Applicant–Appellee, the Farmers Reservoir and Irrigation Company, and the Burlington Ditch, Reservoir and Land Company.

Steven L. Janssen, Boulder, Colorado, Attorney for Applicant–Appellee, the Henrylyn Irrigation District.

Balcomb & Green, P.C., David C. Hallford, Sara M. Dunn, Scott A. Grosscup, Glenwood Springs, Colorado, Attorneys for Opposer–Appellee Public Service Company of Colorado d/b/a Xcel Engergy, Inc.

No appearance by or on behalf of: United Water and Sanitation District; East Cherry Creek Valley Water and Sanitation District; Metro Wastewater Reclamation District; Public Service Company of Colorado; Town of Lochbuie; Platte Valley Irrigation Co.; City of Aurora; Golf Course Heritage Todd Creek; Todd Creek Farms Metro District; Centennial Water and Sanitation District; City of Boulder; Harmony Ditch Company; Irrigationists' Association; City of Thornton; State Board of Land Commissioners; Colorado Division of Wildlife; City of Blackhawk; City and County of Broomfield; City of Brighton; Lower Latham Reservoir Company; Aggregate Industries–WCR, Inc.; Albert Frei and Sons, Inc.; Henderson Aggregate Ltd; HP Farms, Inc.; PV Water Holdings, LLC; Adams County Board of Commissioners; Riverside Irrigation District; Riverside Land Co.; Brighton Ditch Company; Parker Water and Sanitation District; Platte Valley Irrigating and Milling Co.; Central Colorado Water Conservancy District; South Adams County Water and Sanitation District; Rangeview Metropolitan District; Equus Farms Inc.; State Water Engineer; Fulton Irrigation Ditch Co.; City of Greeley; Northern Colorado Water Conservancy District; Bijou Irrigation Company; Bijou Irrigation District; City of Commerce City; David Dechant; Consolidated Ditches Company of District No. 2; City of Sterling; Arapahoe County Water and Wastewater; James Hall, Division Engineer for Water Division No. 1.

Justice EID delivered the Opinion of the Court.

This appeal involves a portion of a much larger case decided in the water court, Division 1, Case No. 02CW403. Opposer–Appellant City of Englewood argues that this court should reverse findings by the water court concerning a settlement agreement between various parties and the City and County of Denver. Englewood claims that the water court erred in interpreting the settlement agreement to be a valid no-call agreement. More specifically, Englewood argues that the agreement is an invalid subordination agreement that improperly expands Denver's water rights and violates the one-fill rule. Additionally, Englewood argues that the water court erred with respect to proof of injury by not allowing Englewood to rely on a presumption of injury, by prohibiting the introduction of certain evidence of injury at trial, by ignoring other evidence of injury in its ruling, and by determining that a stipulation at trial protected junior appropriators from injury.

We now affirm the judgment of the water court and hold that the settlement agreement is a valid no-call agreement. We also reject Englewood's additional claims.

## I.

Farmers Reservoir and Irrigation Company ("FRICO"), Burlington Ditch, Reservoir and Land Company, and Henrylyn Irrigation District (collectively, "the Companies"), own several water rights diverted at the Burlington headgate of the South Platte River, including the most senior storage right on the river, consisting of reservoir priorities Nos. 1 and 2 for filling Barr and Oasis Reservoirs to 11,081 acre feet at a rate of 350 cubic feet per second ("cfs") with a priority date of November 20, 1885 (the "1885 Oasis storage right"). In addition, FRICO possesses a 1909 Barr Lake storage right, which is used to fill Barr Lake after the 1885 Oasis storage right has filled, and a 1909 Milton storage right, which is used to fill Milton Lake (the "1909 storage rights").

The City and County of Denver, acting by and through its Board of Water Commissioners ("Denver"), possesses several water rights upstream of the Burlington headgate that are all junior to the 1885 Oasis storage right with priority dates of October 1, 1889, September 1, 1892, and May 1, 1899. These rights are also referred to as Denver's In-between water rights. Denver additionally

operates exchanges on the South Platte River that use reusable effluent as the substitute supply.

Englewood has two relevant water rights on the South Platte River that are junior to the rights of both the Companies and Denver: the McLellan Reservoir right with a 1948 priority date, and an exchange right with appropriation dates in 1989 and 1990 allowing Englewood to exchange water diverted at the McBroom Ditch headgate on Bear Creek up to Chatfield Reservoir and then on to McLellan Reservoir.

Denver entered into a settlement agreement ("the Agreement") with the Companies on August 31, 1999 to resolve a variety of disputes. Among other things, the Agreement provided that (1) the Companies would accept Denver's reusable effluent as a substitute supply; (2) Denver would provide the Companies with 5,000 acre feet of reusable water every year; and (3) the Companies would not place a call under the 1885 Oasis storage right. Specifically, the no-call provision of the Agreement provided that:

> Under this agreement, the Companies will divert under the 1885 Oasis storage right but will not place a call under the 1885 Oasis storage right. FRICO may place a call under the 1909 Barr Lake storage right or the Milton storage right until such time as the 1885 Oasis storage right and the 1909 Barr Lake storage right have achieved a Paper Fill.

1999 Agreement, ¶ 4.1.1. Additionally, the Agreement provided that when the 1885 Oasis storage right is filling, Denver:

> may divert In-between Water while the 1885 Oasis storage right is storing water. [Denver] and FRICO shall keep an accounting each year of the amount of In-between Water diverted by [Denver] in order to determine whether any Payback Water is due under paragraph 4.2. While the 1885 Oasis storage right is achieving a Paper Fill, [Denver] shall not, through its diversion of In-between Water, reduce the amount of water divertable for the 1885 storage decree below 150 cfs. For purposes of this paragraph 4.1, divertable water includes both water available at the Burlington–O'Brian Canal Ditch headgate and the amount of water Pumpable from the Metro Pumps.

1999 Agreement, ¶ 4.1.

In 2002 and 2004, the Companies and others filed applications for changes of water rights, alternate points of diversion, an appropriative right of exchange, a new junior water right, and a plan for augmentation.[1] In July 2002, Englewood filed its challenge to the Companies' 2002 application alleging harm from the Agreement between Denver and the Companies.[2] In February 2008, both Denver and Englewood filed motions for determinations of law regarding the Agreement pursuant to C.R.C.P. 56(h). On April 1, 2008, the water court issued an order regarding the Agreement, finding that: (1) the 1999 Agreement is a valid no-call agreement in which the Companies contracted

---

1. The original application by the Companies was filed on May 31, 2002, and amended on September 29, 2004 in Case No. 02CW105. FRICO and others brought a different application on December 31, 2004 in Case No. 04CW362. Case Nos. 02CW105 and 04CW362 were subsequently bifurcated and consolidated with other related cases through several orders of the water court, with certain claims from each being consolidated into Case No. 02CW105(B). Case No. 02CW105(B) was ultimately renumbered as Case No. 02CW403, and it is this case that resolved, among other issues, the claims regarding the Agreement that are currently before this court.

2. Englewood raised its claims of injury from the Agreement "either 1) because the application [in Case No. 02CW105] seeks a change of the 1885 Oasis priority, and historic conditions must be

maintained to prevent injury, or 2) Englewood complains that the undecreed change of the 1885 Oasis priority injures Englewood, which complaint is made independently of [the] application" in Case No. 02CW105. Englewood Statement of Opp'n, Case No. 02CW105, July 29, 2002. The water court expressed confusion as to why Englewood's complaints regarding the Agreement were being litigated within the adjudication of the Companies' application, but nonetheless addressed them in the consolidated Case No. 02CW403. Order Regarding the 1999 Agreement, ¶ 3 (Dist. Ct., Water Div. No. 1 Apr. 1, 2008) ("It is unclear to the court why certain aspects of the 1999 Agreement are being litigated together with the adjudication of the applications in this matter, several years after the execution of the original agreement.").

away their right to place an administrative call for water on the river under the 1885 Oasis storage right; (2) the Agreement did not constitute a change of water right or either a selective or general subordination agreement; (3) Englewood did not have a right to maintenance of stream conditions created by the placement of a call; (4) there is no legally cognizable claim of injury from a no-call agreement unless such an agreement violates public policy; and (5) Englewood's claims are not entitled to a presumption of injury, and Englewood has the burden of proof of injury. Because the water court was not able to determine whether the Agreement in practice violated public policy or the one-fill rule, a two-day trial on these issues was held in May 2008.

On September 5, 2008, the water court ruled in its Findings of Fact, Conclusions of Law and Order that Englewood failed to present evidence that the Agreement violates either public policy or the one-fill rule. Additionally, after not allowing in certain evidence allegedly establishing injury, the water court held that Englewood's evidence of injury was unconvincing. Englewood appealed these determinations by the water court, and we now affirm.[3]

## II.

 We review the water court's legal conclusions de novo. *Cotton Creek Circles, LLC v. Rio Grande Water Conservation Dist.*, 218 P.3d 1098, 1101 (Colo.2009). This includes the water court's determinations of questions of law in the April 1, 2008 Order regarding the 1999 Agreement. With respect to the water court's evidentiary rulings at trial, we review the decision to admit or deny evidence for abuse of discretion. *See Water Rights of Masters Inv. Co. v. Irrigationists Ass'n*, 702 P.2d 268, 273–74 (Colo. 1985). Factual findings are binding on appeal " 'unless they are so clearly erroneous as to find no support in the record.' " *City of Black Hawk v. City of Central*, 97 P.3d 951, 956 (Colo.2004) (quoting *In re Gibbs*, 856 P.2d 798, 801 (Colo.1993)).

We agree with the water court's determination that the Agreement is a valid no-call agreement. Additionally, we reject Englewood's claims that the water court erred by not allowing it to rely on a presumption of injury, by prohibiting the introduction of certain evidence of injury at trial, by ignoring other evidence of injury in its ruling, and by determining that a stipulation at trial protected junior appropriators from injury.

## A.

Englewood argues that the water court erred in finding the Agreement to be a valid no-call agreement. It instead suggests that the Agreement is an unlawful subordination agreement that improperly expands Denver's water rights and violates the one-fill rule. We reject these claims in turn and find the Agreement to be a valid no-call agreement between Denver and the Companies.

 We have repeatedly affirmed the ability of a holder of a senior right to enter into a no-call agreement with the holder of a junior right. *See Pub. Serv. Co. v. Meadow Island Ditch Co. No. 2*, 132 P.3d 333, 342 (Colo.2006); *USI Props. E., Inc. v. Simpson*, 938 P.2d 168, 176 (Colo.1997); *Perdue v. Fort Lyon Canal Co.*, 184 Colo. 219, 223, 519 P.2d 954, 956 (1974) ("By contract a person can

---

3. The specific issues presented were:

 A. Did the Water Court err by interpreting a settlement agreement to be a lawful "no call" agreement where such agreement:
 1. Enables the Beneficiary to gain on average approximately 7,400 acre-feet in gross diversions from an over-appropriated stream without replacement of depletions while the purportedly subordinated right suffers no diminution of its diversions because it remains the most senior storage right on the river;
 2. Is designed to benefit only certain upstream rights and is, therefore, a selective subordination, which is void because it is contrary to public policy; and
 3. Violates the one-fill rule on its face and in actual operation?
 B. In regard to proof of injury as a result of the settlement agreement, did the Water Court err by:
 1. Prohibiting the party claiming injury from relying on the presumption of injury on an over-appropriated stream, or providing such injury at trial and ignoring other evidence of injury; and
 2. Determining that a stipulation at trial protected junior appropriators from injury?

make his priority inferior to another, and the water judge found that this happened here."). The plain terms of the contractual provisions will define the no-call agreement, *see USI Props. E., Inc.*, 938 P.2d at 176, but such provisions are void and unenforceable if contrary to public policy, *see Willows Water Dist. v. Mission Viejo Co.*, 854 P.2d 1246, 1255 (Colo.1993).

■ In this instance, the plain terms of the Agreement demonstrate that the parties intended to enter into a no-call agreement. Under paragraphs 4.1 and 4.1.1, the Companies expressly agreed to limit the placement of calls under the 1885 Oasis storage right. Specifically, paragraph 4.1 provides that Denver may divert its more junior In-between rights provided that there are 150 cfs of divertible water at the Burlington headgate while the Companies' 1885 Oasis storage right is storing water. Paragraph 4.1.1 further clarifies how the Companies will operate their 1885 Oasis storage right, specifically noting that "[u]nder this agreement, the Companies will divert under the 1885 Oasis storage right but *will not place a call* under the 1885 Oasis storage right." (emphasis added). This language clearly indicates that the parties entered into a no-call agreement, and we will not disturb this unambiguous contract provision. *See USI Props. E., Inc.*, 938 P.2d at 174 ("The parties agreed [in a written stipulation] that Englewood, Denver and Climax would not call the waters of Beaver Creek.... We will not rewrite the provisions of an unambiguous stipulation.").

Englewood argues that the Agreement is not a valid no-call agreement, but rather an unlawful subordination agreement that improperly changes and expands the use of an over-appropriated stream and violates the one-fill rule. Underlying this position is Englewood's interpretation of the Agreement as allowing the Companies to fill the 1885 Oasis storage right using calls on FRICO's 1909 Barr Lake and Milton storage rights. Englewood derives this interpretation from the latter half of paragraph 4.1.1, which provides: "FRICO may place a call under the 1909 Barr Lake storage right or the Milton storage right until such time as the 1885 Oasis storage right and the 1909 Barr Lake storage right have achieved a Paper Fill."

As the water court noted, it may be a violation of the one-fill rule to use calls under the 1909 storage rights to fill both those rights and the 1885 Oasis storage right. *See Orchard City Irrigation Dist. v. Whitten*, 146 Colo. 127, 141, 361 P.2d 130, 137 (1961) (holding that a storage right may only fill once per year). However, like the water court, we do not agree that Englewood's interpretation of the Agreement is reasonable or that the Agreement grants a right to fill the 1885 Oasis storage right and the 1909 storage rights under calls on just the 1909 storage rights. Instead, interpreting the language in paragraph 4.1.1 in a manner consistent with existing Colorado water law, *see Norfolk & W. Ry. Co. v. Am. Train Dispatchers Ass'n*, 499 U.S. 117, 129–30, 111 S.Ct. 1156, 113 L.Ed.2d 95 (1991) (noting that laws existing at the time and place of contracting are incorporated into the terms of the contract); *Riverside Reservoir & Land Co. v. Green City Irrigation Dist.*, 59 Colo. 514, 518, 151 P. 443, 445 (1915) ("[T]he parties may not contract in violation of the statute, and the law must be read into the contract and become a part of it."), we find that the second sentence following the express no-call provision is merely an express reservation by FRICO of its rights to divert water under its 1909 priorities. *See* 1999 Agreement, ¶ 4.1.1 ("[T]he Companies ... will not place a call under the 1885 Oasis storage right. FRICO may place a call under the 1909 Barr Lake storage right or the Milton storage right until such time as the 1885 Oasis storage right and the 1909 Barr Lake storage right have achieved a Paper Fill."). We thus affirm the water court's conclusion that the Agreement does not violate the one-fill rule on its face.

Additionally, we agree with the water court that there is no evidence that the Agreement violates the one-fill rule in actual operation. Englewood did not present any evidence that FRICO has called on the 1909 storage rights to fill the 1885 Oasis storage right, and Denver and the Companies have stipulated that a call under the 1909 storage rights cannot be used to fill the 1885 Oasis

storage right, essentially barring the possibility that the one-fill rule will be violated via the Agreement in the future.

■ We also agree with the water court's finding that the Agreement is neither a selective subordination agreement nor a general subordination agreement. Englewood is incorrect in arguing that no-call agreements are a type of subordination agreement. In *Perdue*, we noted that an appropriator may contract to make its priority inferior to another. 184 Colo. 219, 519 P.2d 954. In our subsequent water law cases, we have cited this proposition when discussing the propriety of no-call agreements, *USI Props. E., Inc.*, 938 P.2d at 176, as well as subordination agreements, *Bd. of County Comm'rs v. Crystal Creek Homeowners' Ass'n*, 14 P.3d 325, 341 (Colo.2000). No-call agreements and subordination agreements are similar in that senior appropriators in each are effectively contracting away part of the bundle of sticks that compose their water rights, with the general result that water that could otherwise go to the senior appropriator is made available to some or all junior appropriators. However, the agreements are fundamentally different in terms of what is being contracted away by the senior appropriator. In a subordination agreement, "the holder of an otherwise senior water right consents to stand in order of priority behind another person or persons holding a junior water right." *Crystal Creek Homeowners' Ass'n*, 14 P.3d at 329 n. 1. At its core, subordination "is essentially a matter of status between parties" and "establishes priorities between those parties by some means other than the automatic or statutory scheme." *Mt. Emmons Mining Co. v. Town of Crested Butte*, 40 P.3d 1255, 1258 (Colo.2002) (citations omitted). In contrast, a no-call agreement provides that a senior appropriator will not place a call on a particular water right that it holds. *See USI Props. E. Inc.*, 938 P.2d at 176. Thus, a no-call agreement contracts away the *right to place a call* to the Division Engineer requesting more water to fulfill the senior right whereas a subordination agreement contracts away the senior appropriator's more *senior priority status* (either to specific junior appropriators in a selective subordination or all

junior appropriators in a general subordination). In this case, the Agreement makes no mention of any party agreeing to contract away its priority status, nor does it suggest a change in the relative priority status of the parties. In the absence of such language, we will not interpret the Agreement to impose such a change. *Cf. Meadow Island Ditch Co. No. 2*, 132 P.3d at 342 (declining to interpret an agreement's silence on change of water use as permitting a change of use). In sum, the Agreement is not a subordination agreement, but rather, as its plain language indicates, a no-call agreement.

■ Finally, we find that the agreement does not amount to an unlawful change or expansion of the use of an over-appropriated stream. The right to change the use of a water right is an important stick in the bundle of rights that constitute a Colorado water right. It is not, however, absolute, as it must be balanced against the competing interests of other holders of vested water rights, including their right to "the continuation of stream conditions as they existed at the time they first made their appropriation." *Farmers Reservoir & Irrigation Co. v. City of Golden*, 44 P.3d 241, 245 (Colo.2002). As such, changes in water rights cannot be made "in any manner other than through judicial approval, following statutorily authorized procedures." *Fort Lyon Canal Co. v. Catlin Canal Co.*, 642 P.2d 501, 506 (Colo.1982) (citations omitted).

Englewood argues that the Agreement unlawfully changes the stream conditions by allowing the 1909 storage rights to fill the 1885 Oasis storage right and allows Denver to expand its use by precluding the placement of a call on the 1885 Oasis storage right, thereby increasing Denver's In-between rights which historically have been subject to such calls. As noted above, Englewood's interpretation of the Agreement as allowing the 1885 Oasis storage right to be filled by calls on the 1909 storage rights is incorrect, which means that the Agreement is not acting as an undecreed change in water rights in this manner. Additionally, the Agreement contains no language regarding a change or expansion in use, suggesting

that the parties to it did not intend to grant Denver any such change or expansion of use. *See Meadow Island Ditch Co. No. 2*, 132 P.3d at 342 ("[T]he 1925 Agreements contain no language regarding a change of use for the excess water because Meadow Island did not intend to grant a change of use.").

 Moreover, Englewood's argument fails because the no-call situation created by the Agreement is not a change of water rights. The general concept of a call—including the right not to place a call—is not within the statutory definition of "change of water right." *See* § 37–92–103(5), C.R.S. (2009) (defining "change of water right" as, among other things, "a change in the type, place, or time of use," a "change in the point of diversion," or a "change in the means of diversion"). Additionally, a change and a call are treated differently under Colorado water law. For example, a change in water rights, such as a change in use or change in diversion, requires approval under section 37–92–302, C.R.S. (2009), after a determination that the proposed change "will not injuriously affect the owner of or persons entitled to use water under a vested water right or a decreed conditional water right." *See* § 37–92–305(3)(a), C.R.S. (2009). In contrast, "[a] call is placed on a river when a senior appropriator forces upstream juniors to let sufficient water flow to meet the requirements of the senior priority." *USI Props. E., Inc.*, 938 P.2d at 171 n. 2 (citation omitted). And, unlike review of a requested change of water right, the State Engineer reviewing a request for a call does not look to determine whether the call will injure others with vested water rights, but rather looks to whether ordering a call will succeed in fulfilling the water right of the calling senior appropriator. *See* § 37–92–502(2)(a), C.R.S. (2009) (stating that if "a discontinuance has been ordered pursuant to the provisions of this paragraph (a), and nevertheless such discontinuance does not cause water to become available to such senior priorities at the time and place of their need, then such discontinuance order shall be rescinded"). Moreover, as noted above, a water right holder is free to contract away his right to place a call through no-call agreements whereas a change in water right must be judicially approved. Englewood is simply incorrect in asserting that the no-call provision in the Agreement amounts to an undecreed change or expansion of water rights.

Because there is no change of water right, Englewood's claim that the no-call provision interferes with its right to the maintenance of stream conditions also fails. The right to the maintenance of stream conditions has always been discussed with respect to changes in water rights. *See, e.g., Orr v. Arapahoe Water & Sanitation Dist.*, 753 P.2d 1217, 1223 (Colo.1988). In fact, this concept is directly related to the statutory standard for evaluating an application for a change of water right—specifically, the fact that potential injury to other water rights is considered in such applications. *Farmers Reservoir & Irrigation Co.*, 44 P.3d at 245 n. 3 (citing § 37–92–305(3), C.R.S. (2001)). Given that requests for calls are not evaluated in terms of the potential injury to other water rights, it makes little sense to speak of a right of other appropriators to maintenance of stream conditions based on historical call requests of senior rights. Stated differently, junior appropriators have no right to maintenance of stream conditions created by the historical use of calls. Moreover, because no such right exists, the Agreement in this case does not violate public policy. *Willows Water Dist.*, 854 P.2d at 1255 ("[C]ontractual provisions … are … void and unenforceable if they are contrary to … public policy." (citations omitted)).

Finally, we note that the right asserted by Englewood to the maintenance of stream conditions created by the historical use of calls is inconsistent with our caselaw recognizing that the right to request calls or not to request calls is generally left to the water right holder. There is no requirement that a senior water right holder place a call on the river to effectuate its water rights, *see Tongue Creek Orchard Co. v. Town of Orchard City*, 131 Colo. 177, 183, 280 P.2d 426, 429 (1955) ("We know of no law which compels a party to use his water right…."), or any statutory authority for the State or Division Engineers to require the placement of a call, *see* §§ 37–92–301(1), –301(3), –502, C.R.S. (2009). Instead, we have explicitly

recognized that a water right holder may contractually choose to not request calls on its rights. *See Meadow Island Ditch Co. No. 2*, 132 P.3d at 342; *USI Props. E., Inc.*, 938 P.2d at 176; *Perdue*, 184 Colo. at 223, 519 P.2d at 956 ("By contract a person can make his priority inferior to another, and the water judge found that this happened here."). Consistent with this caselaw, we agree with the water court that the Agreement is a valid no-call agreement.

### B.

Englewood further alleges that the water court erred by (1) not allowing it to rely on a presumption of injury; (2) not allowing it to present evidence of injury and improperly discounting the allowed evidence of injury; and (3) determining that the stipulation at trial protected junior appropriators from injury. We reject each of these claims of error.

■ First, we find that the water court was correct in determining that Englewood's claimed injury did not fit within any established presumptions and that Englewood was not entitled to a presumption of injury here. As the water court noted, where an applicant seeks judicial approval of a change of water right, implementation of a rotational crop management contract, or a plan for augmentation, the applicant must establish that "such change, contract or plan will not injuriously affect the owner of or persons entitled to use water under a vested water right or a decreed conditional water right." § 37–92–305. Thus, an applicant has the initial burden to establish a prima facie case of no injury. *See City of Aurora ex rel. Util. Enter. v. Colo. State Eng'r*, 105 P.3d 595, 614 (Colo.2005). Although this is not an explicit presumption of injury in favor of other vested water right holders in changes of water use or plan for augmentation cases, the water court correctly recognized that the prima facie burden on applicants of showing no injury acts similarly to such a presumption. We have, however, recognized an express presumption of injury with respect to groundwater depletion through well pumping. In *Simpson v. Bijou Irrigation Co.*, 69 P.3d 50, 59 n. 7 (Colo.2003), we noted that:

[A]bsent a showing to the contrary, Colorado law presumes that (1) groundwater is tributary to the stream, and (2) that where surface water is over-appropriated, groundwater depletion through well pumping causes material injury to senior appropriators.

(internal citations omitted).

Because the Agreement provisions are not an application for a change of water rights or a plan for augmentation and because this case clearly does not concern groundwater depletion through well pumping, Englewood is not entitled to any possible presumptions of injury. Moreover, we agree with the water court that beyond the prima facie burden of proof of non-injury in section 37–92–305 and the presumptions expressly recognized in our caselaw, injury to water rights is not to be more broadly presumed. Instead, since Englewood's claim is more appropriately seen as a request for injunctive relief against the operation of the Agreement, Englewood must bear the burden of proof of injury. *See Groundwater Appropriators of the S. Platte River Basin, Inc. v. City of Boulder*, 73 P.3d 22, 27 (Colo.2003) (noting that the "rules of civil procedure, including those providing for counterclaims and injunctive relief, generally apply to water court practice and procedure"); *Rocky Mountain Animal Def. v. Colo. Div. of Wildlife*, 100 P.3d 508, 518–19 (Colo.App.2004) (regarding permanent injunctions).

■ Additionally, we cannot conclude that the water court abused its discretion by not allowing certain evidence that Englewood alleges establishes its injury. Englewood sought to introduce at trial a document prepared by Denver anticipating a net gain of 3,000 acre feet for its In-between rights as a result of the Agreement. However, after Englewood admitted that such evidence was offered to show that Denver and the Companies were operating in violation of the one-fill rule and the water court confirmed that Denver and the Companies would stipulate that they would not operate in such a manner, the water court found such evidence unnecessary and decided not to admit it. Englewood later sought to introduce evidence that it

claimed established that Denver diverted on average 7,400 acre feet of water on its In-between rights during the fill period for the 1885 Oasis storage right whereas those rights would have been out of priority prior to the Agreement because of the call on the 1885 Oasis storage right. The water court refused to allow this evidence because Englewood could not show that there was a 1909 call on the river at the time such that the diversions met the Agreement's definition of In-between rights. Given the record, neither of these challenged evidentiary rulings are "manifestly arbitrary, unreasonable, or unfair," and we do not find that the water court abused its discretion in making them. *See Palizzi v. City of Brighton,* 228 P.3d 957, 962 (Colo.2010); *Water Rights of Masters Inv. Co.,* 702 P.2d at 273–74.

■ The water court also did not err in its determination that Englewood's evidence of injury was "unconvincing for several reasons." Englewood alleges that the water court ignored the evidence presented at trial that Englewood claims established that, as a result of the Agreement, the absence of a call on the 1885 Oasis storage right allows Denver to divert on its In-between direct flow and storage rights with the result of reduced flows to downstream reservoirs on the South Platte River. However, we cannot conclude that the water court's factual finding of no injury based on the evidence was " 'so clearly erroneous as to find no support in the record.' " *City of Black Hawk,* 97 P.3d at 956 (quoting *In re Gibbs,* 856 P.2d at 801). Instead, the water court explains in five paragraphs why the offer of proof of injury by Englewood is unconvincing, noting several damaging admissions by Englewood's witness and, in particular, the admission that Englewood's 1948 McLellan storage right has benefited from the no-call agreement.

■ Finally, we reject Englewood's assertion that the water court erred in determining that the stipulation at trial protected junior appropriators from injury. At trial, Denver and the Companies agreed to stipulate that, under the Agreement, the 1909 storage rights could not be used to fill the 1885 Oasis storage right. As noted above, Englewood's interpretation of the Agreement as allowing the Companies to issue a call on the 1909 storage rights and fill the 1885

Oasis storage right with that call underlies Englewood's claims of injury—namely, that the Agreement is not a valid no-call agreement, but rather an unlawful subordination agreement that improperly changes and expands the use of an over-appropriated stream and violates the one-fill rule. Thus, a stipulation by the parties that they would not use the 1909 storage rights to fill both the 1909 storage rights and 1885 Oasis storage right clearly cures Englewood's alleged potential injury. Accordingly, we cannot conclude that the water court erred in finding that the stipulation protected junior appropriators from injury.

In sum, we reject Englewood's arguments alleging errors by the water court with respect to proof of injury. The water court correctly concluded that Englewood was not entitled to a presumption of injury; did not abuse its discretion in its evidentiary rulings; did not err in its factual finding of no injury; and did not err in determining that the stipulation at trial protected junior appropriators from injury.

### III.

For the reasons stated above, we affirm the judgment of the water court.